Frederick D. SUGG, Appellant,

v.

Marjorie MORRIS, Appellee.

No. 332.

Supreme Court of Alaska.

May 21, 1964.

George M. Yeager, Fairbanks, for appellant.

Harris R. Bullerwell, Taylor & Bullerwell, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

In this action Marjorie Morris as plaintiff asked the court below to adjudge her to be a co-owner with the defendant, Frederick Sugg, in certain real property[1] and to declare the respective interests of the parties therein. Although title to the property was taken in the name of the defendant alone, Marjorie alleged in her complaint that she contributed from her income a portion of the monetary consideration paid towards the purchase price of the property and that the defendant assured her that the property was to be theirs jointly. The case was tried to the court without a jury and from a money judgment for $3,600 in favor of the plaintiff, the defendant is prosecuting this appeal.

The defendant's main contention seems to be that the evidence does not support the findings, conclusions and judgment of the trial court and that, upon the facts adduced at the trial and the law applicable to the case, the plaintiff had shown no right to relief and that, consequently, the defendant's motion for an involuntary dismissal of the action under the provisions of Civil Rule 41(b)[2] should have been granted.[3]

---

1. The plaintiff's claim of joint ownership extended also to certain personal property mentioned in the complaint, but that issue seems to have been settled by the parties before the trial.

2. Civil Rule 41(b) reads in part as follows: "After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. * * *"

3. The defendant first moved for an involuntary dismissal at the close of the plaintiff's evidence and then renewed the mo-

We turn our attention first to the evidence contained in the record and then to the law of the case.

The plaintiff testified that she and the defendant met at Fairbanks in 1953 or 1954 and in 1955 entered into a deliberate meretricious relationship, holding themselves out on occasion as husband and wife. Both were gainfully employed and in October, 1959, purchased a house and lot as income property and to provide themselves with a rent-free home. The purchase price of this property was $20,750.00.

The plaintiff further testified that out of their joint earnings, the parties made payments on the property as follows: a cash down payment of $1,000; the sum of $2,000 as satisfaction in full of a $4,500 second mortgage and monthly payments of $250 on the first mortgage until they had built up a total cash equity in the property of about $8,000. Differences developed between the parties over this property in 1961 and in September or October of that year they terminated their unlawful union and went their separate ways, the defendant having first informed the plaintiff that she had no more right in the property.

There was evidence that the plaintiff was gainfully employed, except for two or three months each year, during the time that she lived with the defendant, and earned approximately $100 per week. At the same time the defendant worked as a truck driver on construction jobs in the summer and as a taxicab operator in the winter. The parties filed a joint income tax return for 1960, as husband and wife, showing the plaintiff's gross earnings as $1,288.38 and the defendant's as $7,396.06. A deed to the property in question, dated October 20, 1959, and recorded September 2, 1960, names the defendant alone as grantee. The defendant, when on the witness stand, stated that it was his money only and none of the plaintiff's that was ever paid on the purchase price of the property.[4] He denied that he had ever made any business arrangement with the plaintiff concerning the property or that he had ever told her that she was to have an interest in the property.

From the foregoing evidence the court found (1) that the defendant while living with the plaintiff and holding her out as his wife agreed with her to purchase the real property mentioned above; (2) that the parties made a down payment of $1,000 on the purchase price, borrowed $2,000 to pay off a second mortgage on the property and made monthly payments of $212 each on the first mortgage from November 3, 1959, through July 31, 1961; and (3) that both parties were employed from a time prior to the purchase of the property through July 31, 1961, and both "contributed to the purchase of the real property and in making the payments on both the first and second mortgage." From these findings the court concluded that the plaintiff was entitled to a fair and equitable share of the accumulated equity in the property as of July 31, 1961 and, therefore, was entitled to the sum of $3,600. Judgment was entered accordingly.

The trial court did not make what we deem to be a necessary basic finding as to the actual amount contributed by the plaintiff toward the purchase of the property. Instead, it seems to have reckoned that the parties had a joint equity in the property worth roughly $7,200[5] and that the plain-

tion at the close of all the evidence. The motion was denied by the court in each instance.

4. On cross-examination the defendant admitted that the plaintiff could have deposited some of her earnings along with his in a bedroom bureau drawer. Whenever there was enough money in the drawer to warrant doing so, it was taken to the bank and deposited there. The plaintiff had testified that payments on the purchase price of the house were sometimes made by check drawn on the bank account.

5. We assume that the trial court had in mind that between November 3, 1959 and July 1, 1961 there had been made on the first mortgage twenty monthly payments of $212 each, or a total of $4,240. This amount plus the down payment of $1,000 and the $2,000 paid on the second mortgage adds up to a total of $7,240.

tiff had contributed one half, or $3,600, of that amount. But, even if the court had made a specific finding as to a sum certain contributed by the plaintiff, we would have had to strike it down as clearly erroneous, for the reason that there is no evidence in the record to support such a finding.

The case sounded in equity as the trial judge rightly ruled. Then he proceeded, however, to treat it as being in the nature of a divorce action with a division of property involved, for in ruling on the plaintiff's motion for dismissal at the close of the plaintiff's evidence he stated:

"[A]nd I have considered this case on the pleadings as an equitable matter. I cannot find any justification in law for the plaintiff's position or the defendant's defense. * * * [B]ut I do know that if a divorce with a property dispute came here before this Court, that the parties would be entitled to consideration as to the—a share of that which was acquired during that supposed coverture.

"But at least a prima facie case and equitable right, of a division of this property has been established by this plaintiff in the same manner as if

they were to come before this Court in a divorce. * * *"

▮ In our opinion the equitable principles which apply to the judicial division of marital property of a man and woman who have been living together in lawful wedlock or in a bona fide putative marriage [6] are not applicable where the man and woman had been knowingly living in a meretricious relationship and then one or both of them decided to terminate that relationship.[7]

▮ In her situation, the only interest which the plaintiff possessed in the property was that of a beneficiary *pro tanto* under a resulting trust [8] and the burden fell upon her to show not only the combined monetary amount contributed by the parties toward the purchase price but also the precise amount contributed by herself.[9] This is so for the reason that the presumption that the defendant in whose name the legal title to the property is vested is the absolute owner thereof may not be overcome by mere surmise or conjecture.[10] Since the plaintiff very definitely failed to prove any precise amount of her own funds contributed toward the equity in the property under consideration, we conclude that the judgment of the trial court must be reversed.

Reversed.

6. For cases in which this court has discussed some of the principles applicable to the judicial division of marital property in divorce actions see Merrill v. Merrill, Opinion No. 181, 388 P.2d 259 (Alaska 1964); McSmith v. McSmith, Opinion No. 176, 387 P.2d 454 (Alaska 1963); Crume v. Crume, Opinion No. 124, 378 P.2d 183 (Alaska 1963); Rhodes v. Rhodes, 370 P.2d 902 (Alaska 1962).

7. Vallera v. Vallera, 21 Cal.2d 681, 134 P.2d 761 (1943); Flanagan v. Capital Nat'l Bank, 213 Cal. 664, 3 P.2d 307 (1931).

8. Keene v. Keene, 57 Cal.2d 657, 21 Cal. Rptr. 593, 371 P.2d 329, 333–334 (1962).

9. The trial court was not unaware of the burden of proof resting upon the plaintiff under the allegations of her complaint, as witness this statement appear-

ing in its pretrial order: "This is a dispute revolving around the respective interests of the parties to property allegedly acquired as joint or common interests and the principal dispute seems to concern itself with the amount of payments which the plaintiff claims to have made to defendant. Plaintiff must supply to defendant detailed information concerning payments plaintiff claims to have made, which information must be supplied on or before June 15, 1962." If the plaintiff lacked the necessary information to sustain her burden, there were open to her all of the avenues of discovery.

10. Keene v. Keene, supra note 8, 21 Cal. Rptr. at 662, 371 P.2d at 334; and see Platts v. Platts, 134 Mont. 474, 334 P. 2d 722, 731 (1959); Holohan v. McCarthy, 130 Or. 577, 281 P. 178, 181 (1929).