Michael **PESTRIKOFF**, Anna Rae Bent, and Lisa D. Bent, Appellants,

v.

Charles A. **HOFF** and Estate of Dorothy Morrison, Appellees.

No. S–14323.

Supreme Court of Alaska.

June 8, 2012.

---

Robert C. Erwin and Roberta C. Erwin, Robert C. Erwin, LLC, Anchorage, for Appellants.

Patrice A. Icardi, Law Office of Patrice A. Icardi, Anchorage, for Appellee Charles A. Hoff.

LeRoy E. DeVeaux, DeVeaux & Associates, Anchorage, for Appellee Estate of Dorothy Morrison.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

WINFREE, Justice.

### I.  INTRODUCTION

A woman died intestate survived by her husband and three adult children from a previous marriage.  The husband had acquired a boat for a fishing charter business during his marriage to the decedent;  the boat and charter business were titled in his name alone.  Relying on principles of equitable distribution for divorce cases, the estate's personal representative asked the court to include half the value of the boat and a skiff in the estate's property because marital funds had been used to purchase them.  The court denied this request, and the estate's assets were distributed according to statute. The children appeal, contending their mother's estate held an undivided interest in the boats and business.  Because the superior court correctly decided that the equitable distribution framework for divorce proceedings does not apply in probate proceedings, we affirm its decision.

## II. FACTS AND PROCEEDINGS

Dorothy Morrison died largely intestate in July 2007.[1] She was survived by three adult children and her husband of 15 years, Charles Hoff. The court appointed Hoff personal representative of Morrison's estate. After Hoff filed an estate property inventory, Morrison's children objected that he had omitted significant assets, alleging in part that Morrison and Hoff jointly owned a commercial fishing boat. Hoff later agreed to LeRoy DeVeaux's appointment as successor personal representative to minimize the dispute between the parties.

DeVeaux petitioned the court to declare that the estate had title to an undivided one-half interest in the M/V DARIA and a skiff (collectively "the boats"). DeVeaux alleged that the boats were purchased with marital funds during Morrison's marriage to Hoff and that Morrison worked as a crew member on the DARIA, which was used in a fishing charter business. DeVeaux argued that the estate had an ownership interest in the boats and in any money the business earned after Morrison's death.

Hoff objected to the petition, arguing there was no legal or factual basis for including the boats or the charter business as property of the estate. He disputed whether Morrison participated actively in the business and said he and Morrison intended for the boat to remain his separate property. He contended that laws related to the equitable distribution of marital property did not apply outside the divorce context. Hoff also relied on *Faulk v. Estate of Haskins*[2] to argue that Alaska law presumes personal property possessed and used by spouses during a marriage is held as a tenancy by the entirety, with the property becoming the sole property of the surviving spouse after the death of one spouse.

No party asked for a hearing on the petition, and none was held; the probate master recommended that the superior court deny the petition, and the superior court did so. In its written decision, the superior court interpreted several of this court's opinions as limiting the concept of marital property to divorce cases and noted that *Faulk* did not prevent married couples from holding property as individuals. The court decided there was strong evidence that the couple meant Hoff to "preserve individual title" and noted the only evidence to the contrary was that Morrison "worked on the boat occasionally and helped with her husband's business."

The personal representative later proposed a distribution of the estate's assets, which the court approved. Morrison's children objected to the final accounting, again arguing that the boats should have been included as assets of the estate. The court approved the proposed distribution and released the personal representative.

Morrison's children appeal the superior court's decision not to include an interest in the boats and the charter business as property of the estate.

## III. STANDARD OF REVIEW

We review questions of law de novo, adopting the rule of law most persuasive in light of precedent, reason, and policy.[3] We interpret statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.[4]

## IV. DISCUSSION

Alaska Statute 13.12.101(a) provides: "A part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in AS 13.06–AS 13.36, except as modified by

---

1. Morrison had a will for her Ouzinkie Native Corporation stock.

2. 714 P.2d 354 (Alaska 1986).

3. *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1030 (Alaska 2011) (quoting *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008)) (internal quotation marks omitted).

4. *In re Estate of Maldonado*, 117 P.3d 720, 725 (Alaska 2005) (citing *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1234 (Alaska 2003)); *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003) (citing *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

the decedent's will." In the probate code, "'estate' includes the property of the decedent ... as originally constituted and as it exists from time to time during administration."[5] "'[P]roperty' means anything that may be the subject of ownership, and includes both real and personal property and an interest in real or personal property."[6] The children ask us to interpret "property" in the probate code as encompassing an undivided one-half interest in the boats and the charter business.

Hoff was listed as the sole owner of the boats on the purchase documents. On the bill of sale for the DARIA none of the boxes showing an alternative "manner of ownership"—such as joint tenancy—was checked. The only evidence of business ownership in the record was a print-out from the State of Alaska's website showing a business license, issued less than four months before Morrison's death, for a sole proprietorship with Hoff alone listed as the owner.

Morrison's children do not discuss the effect of title, arguing only that relying solely on title would contravene Married Women's Acts, which "abolished the common law unity of husband and wife."[7] But because Alaska is not a community property state,[8] title cannot be disregarded in determining which spouse owns property at death.[9] There is a presumption that the person with title owns the property. In cases of real property, we have held that "this presumption may not be overcome by 'mere surmise and conjecture.'"[10] And AS 28.10.261(a) provides that when title to a motor vehicle is at issue in a civil or criminal proceeding, "the record of registrations and certificates of title as they appear in the files and records of the department are prima facie evidence of the ownership or right to possession." In this vein, we conclude that because Hoff's name alone was on the title to the boats and the business, he was presumptively the sole owner of the property.

■ In *Faulk* we held that "the personal property which a husband and wife jointly possess and use is presumed to be held in tenancy by the entirety" rather than a tenancy in common.[11] *Faulk* concerned personal property either titled in both spouses' names or untitled.[12] Here the superior court correctly observed that nothing in *Faulk* limited a married couple's ability to "preserve individual title" in property; in *Faulk* we noted a married couple could show individual ownership "by appropriate documents or by other evidence which can overturn the presumption of joint ownership."[13] In this case, Hoff's name alone was on the title to the boats and the business, presumptively indicating he owned them in his individual capacity.

■ The presumption of ownership based on title does not apply the same way in divorce cases. Alaska Statute 25.24.160(a)(4) authorizes a court in a divorce judgment to divide the parties' "property, including retirement benefits, whether joint or separate, acquired only during the marriage, in a just manner." For equitable distribution purposes, all property acquired during a mar-

5. AS 13.06.050(14).

6. AS 13.06.050(39).

7. *Carver v. Gilbert,* 387 P.2d 928, 931 (Alaska 1963) (construing AS 25.15.010–.030).

8. *See Clauson v. Clauson,* 831 P.2d 1257, 1262 (Alaska 1992) (noting Alaska is an equitable distribution state but California is a community property state). Alaska permits spouses to enter into a written agreement classifying some or all of their property as community property. AS 34.77.090. The Alaska Community Property Act provides for treatment and division of community property at death. AS 34.77.150–.155.

9. *See* UNIF. PROBATE CODE, Art. II, Pt. 2, gen. cmt. (Revised 1990 Version) (amended 1993), 8 U.L.A. 94 (1998) ("[I]n the common-law (title-based) states ... [t]he regime is one of separate property. Each spouse owns all that he or she earns.").

10. *St. Paul Church, Inc. v. Bd. of Trs. of the Alaska Missionary Conference of the United Methodist Church, Inc.,* 145 P.3d 541, 554 (Alaska 2006) (quoting *Sugg v. Morris,* 392 P.2d 313, 316 (Alaska 1964)).

11. 714 P.2d 354, 355 (Alaska 1986).

12. *Id.* at 354–55.

13. *Id.* at 355 (quoting *DuPont v. DuPont,* 98 A.2d 493, 496 (Del.Ch.1953)) (internal quotation marks omitted).

riage is presumed to be marital property.[14] But the concepts of marital property and its equitable distribution do not apply at the death of a spouse.[15]

■ Morrison's children attempt to justify the use of equitable distribution in probate by arguing that the probate code, like the divorce code, recognizes the partnership theory of marriage. In *In re Estate of Maldonado* we found "unconvincing" a surviving spouse's "request to settle the . . . dispute on marriage-as-economic-partnership grounds" and noted that our legislature's changes to the language of Uniform Probate Code (UPC) revisions made it "to some extent unclear whether the legislature approved the economic partnership justification behind the elective share statutes." [16] But even if the legislature accepted a partnership theory of marriage when it amended the Alaska Probate Code in 1996,[17] nothing suggests the legislature intended that property would be retitled on the death of one spouse, which is the effect of Morrison's children's proposed construction of the statute. In fact, the UPC drafting committee considered and failed to adopt the retitling approach Morrison's children suggest here.[18]

Morrison's children's arguments are also contrary to the intent of the 1990 UPC revisions adopted in part by our legislature in 1996.[19] The UPC revisions increased the surviving spouse's share of an intestate decedent's estate, even when the decedent left children from another marriage.[20] The drafters of the UPC revisions recognized this would give the surviving spouse the entire estate in smaller estates.[21] The surviving spouse's increased intestate share was "in addition to any nonprobate property to which she might succeed by reason of the decedent's death such as joint tenancies, joint checking, savings or money-market accounts, life insurance, and pension benefits." [22] The revisions were based in part on empirical evidence that most people choose to give their property to their spouses, even when they have surviving children.[23] The drafters recognized that there was some tension in stepparent situations, and sought to "strik[e] a reasonable balance between the claim of the surviving spouse and that of the decedent's children." [24] In the end, "[t]he dominant objective [of the revised UPC] is to grant the surviving spouse an adequate share." [25]

Our legislature was aware of the policy expanding protections for surviving spouses when it amended the Alaska Probate Code in 1996. It heard extensive testimony from members of the Alaska Bar Association's probate section concerning the elective share provisions.[26] During a hearing Representative Con Bunde asked Bob Manley, a probate attorney testifying about the bill, whether children from a previous marriage were addressed in the revised intestacy provisions; Mr. Manley outlined the intestacy provisions and said "the probate [section of the Alaska Bar Association] with some experience in the area, seemed . . . to think that it was a

---

14. *Coffland v. Coffland*, 4 P.3d 317, 321 (Alaska 2000) (citing *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997); *Jones v. Jones*, 942 P.2d 1133, 1136 (Alaska 1997)).

15. *See* 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 2.7, at 78 (3d ed. 2005) ("If [a] marriage ends in death rather than divorce, the marital property rights never vest and distribution is made under the law of decedent's estates.").

16. 117 P.3d 720, 724 & n. 20 (Alaska 2005).

17. Ch. 75, SLA 1996.

18. Lawrence W. Waggoner, *The Multiple–Marriage Society and Spousal Rights Under the Revised Uniform Probate Code*, 76 IOWA L.REV. 223, 245–47 (1991).

19. Ch. 75, SLA 1996.

20. UNIF. PROBATE CODE § 2–102 cmt. (amended 1993), 8 U.L.A. 81–82 (1998).

21. Waggoner, *supra* note 18, at 233.

22. *Id.* at 234.

23. *Id.* at 230.

24. *Id.* at 233.

25. *Id.*

26. Minutes, H. Judiciary Comm. Hearing on H.B. 308, 19th Leg.2d Sess. (Oct. 16, 1995) (testimony of Bob Manley, Jerry Kurtz, & Deborah Randall).

reasonable compromise in ... terms of what people probably would want or should want." [27]

Adopting the children's suggested construction of the probate statutes would conflict with the legislature's framework for surviving spouses, undo estate planning based on title, and impose significant administrative burdens in probate proceedings. The children cite no legislative history or other Alaska authority to demonstrate that our legislature intended all property acquired during a marriage to be retitled at one spouse's death. The children rely on *In re Estate of Lane*, in which the Kansas Court of Appeals affirmed a trial court's decision that farm equipment was jointly owned by two spouses, even though the property was titled only in the husband's name.[28] But the Kansas court did not apply equitable distribution principles to arrive at its conclusion; it looked at evidence of the "intent and conduct" of the spouses to determine whether they were co-owners of the property and decided that substantial evidence supported the trial court's finding that they were.[29]

We therefore reject the children's argument that divorce-like marital property concepts and equitable distribution should apply in probate proceedings, and continue our reliance on title concepts for the determination of a decedent's estate. But we do not hold that title creates an irrebuttable presumption of ownership. Alaska Statute 13.06.015 permits a court to apply equitable principles to supplement the probate code, and we have acknowledged that a constructive trust might be imposed on property in a probate case in appropriate circumstances.[30] Here the children presented no evidence of misconduct by Hoff justifying a departure from intestacy laws, nor that Hoff and Morrison actually intended the boats and business to be jointly owned, nor that title had wrongfully or erroneously been placed only in Hoff's name.[31]

27. *Id.* at 6.

28. 39 Kan.App.2d 1062, 188 P.3d 23, 28–29 (2008).

29. *Id.*

30. *See Riddell v. Edwards*, 76 P.3d 847, 855–56 (Alaska 2003).

The trial court looked at title and decided that this "strongly evidenc[ed] an intent to preserve individual title" in Hoff. As neither the estate nor the children asked for a hearing or offered specific evidence to the contrary, the court correctly determined the property was Hoff's sole property and was not part of Morrison's estate.

## V. CONCLUSION

We AFFIRM the superior court's decision.

31. *Cf. Tolan v. Kimball*, 33 P.3d 1152, 1155–56 (Alaska 2001) (per curiam) (reaffirming earlier holding that division of property from a nonmarital domestic partnership is governed, to the extent ascertainable, by the parties' express or implied intent, and rejecting rule that title or possession necessarily equals ownership).