*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KRISTY McCONVILLE, | ) |
| | ) Supreme Court No. S-17863 |
| Appellant, | ) |
| | ) Superior Court No. 1PE-16-00046 CI |
| v. | ) |
| | ) O P I N I O N |
| JOHN J. OTNESS, | ) |
| | ) No. 7570 – November 19, 2021 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Petersburg, William B. Carey, Judge.

Appearances: Richard A. Helm, Bookman & Helm, LLP, Anchorage, for Appellant. Darryl L. Jones, Law Office of Darryl L. Jones, Palmer, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices.

WINFREE, Chief Justice.

## I. INTRODUCTION

The superior court determined that an unmarried couple lived for a time as domestic partners and, in connection with the dissolution of the domestic partnership, that a residential property one party purchased was intended to be domestic partnership property. The court ordered a 50/50 division of the partnership equity by way of an equalization payment. The property owner appeals both determinations and the resulting equalization payment. We address only the superior court's property ruling, concluding

that the court erred by determining the residential property was intended to be domestic partnership property. We reverse the superior court's decision, vacate the equalization payment judgment, and remand for further proceedings consistent with our decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

Kristy McConville and John Otness met through an online dating site. Kristy lived in San Diego; John lived in Alaska.[1] John flew to San Diego to meet Kristy, and from 2010 to 2013 they had an intermittent romantic relationship characterized by lengthy times apart and frequent email correspondence. John's primary income was a veteran's disability pension. Kristy worked as a pet groomer. They often talked about buying property together, although neither had the resources to do so and the talk was hypothetical. But in late 2012 Kristy received a substantial inheritance.

Kristy moved to Alaska in May 2013. She bought a property in Kasilof using her own funds and titled solely in her name. Kristy asked John to make loan payments in exchange for living at the property with her, but he made only one payment and he did not pay rent. John did some work on the property, but his receipts for supplies totaled less than $5,000; Kristy claimed to have paid over $50,000 for repairs and improvements. Following an alleged domestic violence incident in late 2013 or early 2014, Kristy told John to either leave or start paying rent, and John left.

In 2014 Kristy purchased a 40-acre, mostly undeveloped homestead near Homer referred to as the Anchor Point property. John later stayed at the Anchor Point property in exchange for doing some work there. About this time a credit card in John's

---

[1] We refer to the parties by their first names, consistent with the parties' briefs and the superior court records; we intend no disrespect.

name was issued on Kristy's account; the card was never activated, although he apparently used her credit cards to pay some expenses.

Throughout 2015 Kristy and John traveled and lived together intermittently. They discussed buying property to renovate and resell for profit, and in the fall of 2015 they looked into jointly purchasing property in Petersburg referred to as the Rose Lane property. Emails between Kristy and John indicated her intent that she pay the down payment and closing costs and that he would obtain Veterans Affairs (VA) financing. But VA loan terms prohibited Kristy's name being on the property title because she and John were not married, and she refused to proceed with the joint purchase.

Kristy ultimately bought the Rose Lane property with cash from her inheritance. She also bought a commercial property in Petersburg, referred to as the Seaside property.

Kristy and John lived at the Rose Lane property together intermittently. John did some work on the property, but the amount and value of his work were disputed. Starting in October or November John paid a joint phone and internet account, the only joint bill in his name. John also paid an electric bill when Kristy was out of town one month. In July 2016 Kristy had knee surgery. John, his mother, and his sister stayed at the Rose Lane property to help while Kristy recuperated. After an argument Kristy left the Rose Lane property and called the police to remove John, and their relationship ended in August 2016.

B.    Proceedings

In October 2016 John filed a complaint for a domestic partnership division of assets. John claimed that he and Kristy had a domestic partnership from 2010 to 2016 and that he was entitled to half of the properties Kristy acquired during that time, in addition to some vehicles and other personal property. Kristy sought summary

judgment,[2] disputing the existence of a domestic partnership and John's entitlement to any property. The court denied summary judgment, finding a genuine dispute of material fact about whether a domestic partnership existed.

After hearing trial testimony from Kristy, John, and John's sister, the superior court determined that a domestic partnership had existed, but between only an unspecified date in 2013 and August 2016. And the court found that only the Rose Lane property was intended as domestic partnership property. The court awarded John 50% of the Rose Lane property's equity and directed the parties to reach an agreement on "how to effectuate" the award.

Kristy sought reconsideration on grounds that the court failed to place a value on the partnership property, that there was insufficient evidence of a domestic partnership to support the court's findings, and that there was insufficient evidence Kristy "intended to make the Rose Lane property partnership property." The court denied reconsideration.

Kristy appeals the superior court's denial of her summary judgment motion, which we will not review.[3] But she also asserts that the court erred by determining a

---

[2]     *See* Alaska R. Civ. P. 56(c) (stating summary judgment is proper if "there is no genuine issue as to any material fact and . . . any party is entitled to a judgment as a matter of law").

[3]     Following a trial we do not review on appeal the denial of a pretrial decision that a genuine issue of fact barred summary judgment. *See Pederson v. Arctic Slope Reg'l Corp.*, 421 P.3d 58, 67 (Alaska 2018) ("[O]ur case law is clear that 'post-trial review of orders denying motions for summary judgment — at least when the "motions are denied on the basis that there are genuine issues of material fact" ' — is precluded. In short, 'the order becomes unreviewable after a trial on the merits.' " (footnote omitted) (quoting *Larson v. Benediktsson*, 152 P.3d 1159, 1169 (Alaska 2007))).

domestic partnership existed and that, if a domestic partnership did exist, the court erred by finding she intended the Rose Lane property to be partnership property.

## III.   STANDARD OF REVIEW

"Property acquired by domestic partners during a domestic partnership should be distributed according to the partners' intent."[4]  "The trial court's underlying findings as to the parties' intent are factual findings reviewed for clear error.  The trial court's classification decisions based on . . . intent are applications of law to fact reviewed de novo."[5]

## IV.   DISCUSSION

### A.   Domestic Partnership

A domestic partnership exists when there is an agreement between the parties to live together indefinitely and "to share in the fruits of [their] relationship as though they were married," based on the totality of the circumstances.[6]  "If the parties dispute whether a domestic partnership exists, . . . the trial court must examine if or when the parties cohabited in a marriage-like relationship," including consideration of factors we articulated in *Bishop v. Clark*.[7]

The superior court characterized both Kristy and John as "hav[ing] issues concerning their own recall and the credibility of their reporting," and it noted that their "hot and cold relationship" might have influenced Kristy's intent at different times.  The court determined that Kristy and John's relationship began in 2010 and ended in August

---

[4]       *Tomal v. Anderson*, 426 P.3d 915, 922 (Alaska 2018).

[5]       *Id.* at 923 (footnote omitted).

[6]       *Bishop v. Clark*, 54 P.3d 804, 810-11 (Alaska 2002), *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915 (Alaska 2018).

[7]       *See Tomal*, 426 P.3d at 922 n.4 (citing *Bishop*, 54 P.3d at 811).

2016. The court found that initially the relationship was "often of a long-distance variety" and "that there was no domestic partnership between 2010 and at least some time in 2013." Acknowledging extended time periods when Kristy and John lived apart from 2013 to 2016, the court nonetheless determined that "there was a relationship here that went beyond just material interests" and it "found a domestic partnership, but one of limited duration." Kristy appeals this determination; we see no need to address it because, as set forth below, we reverse the court's finding that Kristy intended to share property ownership with John.

## B. Domestic Partnership Property

After establishing a domestic partnership's existence, the superior court next determines if the parties intended property acquired in the course of the partnership to belong to the partnership.[8] This decision is based on the totality of the circumstances,[9] and "simply living together is not sufficient to demonstrate intent to share property."[10]

In determining whether domestic partners intended to share ownership of property, we consider factors described in *Bishop*, which are similar to factors used to determine whether a domestic partnership exists:

> [W]hether the parties have (1) made joint financial arrangements such as joint savings or checking accounts, or jointly titled property; (2) filed joint tax returns; (3) held themselves out as husband and wife; (4) contributed to the payment of household expenses; (5) contributed to the improvement and maintenance of the disputed property; and

---

[8] *Id.* at 922-23.

[9] *Bishop*, 54 P.3d at 811, *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915 (Alaska 2018).

[10] *Tomal*, 426 P.3d at 923 (quoting *Boulds v. Nielsen*, 323 P.3d 58, 64 (Alaska 2014)).

(6) participated in a joint business venture. Whether they have raised children together or incurred joint debts is also important.[11]

"[E]ven when . . . factors tilt heavily toward finding partnership property, other evidence may show that the parties had no such intent for particular pieces of property."[12] The court does not need to find a general intent to share everything; the parties may have different intent for different acquisitions.[13] Absent an express agreement "property must be classified strictly according to the parties' intent."[14] "Partnership property generally must be distributed equally (or unequally if the parties intended unequal shares), while separate property must be distributed solely to its owner."[15]

The court noted at trial that "[Kristy] had all the assets" and that John "was . . . getting a free place to live, all of his expenses were being paid essentially." The superior court found "a clear intent on Kristy's part to live with John in whatever property she would ultimately purchase. . . . [with] no expressly stated intent on Kristy's part to share ownership with him." The court stated:

> Kristy, at least, never intended to share all of her property
> with John. As a practical matter, it was all her property. Did

---

[11] 54 P.3d at 811, *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915 (Alaska 2018) (citations omitted).

[12] *Boulds*, 323 P.3d at 64, *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915 (Alaska 2018).

[13] *Tomal*, 426 P.3d at 923.

[14] *Id.*; *see also Bishop*, 54 P.3d at 811, *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915 (Alaska 2018) ("[A]bsent an express agreement, courts should closely examine the facts in evidence to determine *what the parties implicitly agreed upon*." (emphasis added) (quoting *Wood v. Collins*, 812 P.2d 951, 956 (Alaska 1991))).

[15] *Tomal*, 426 P.3d at 924.

she intend to share the fruits of all of her inheritance, so recently received, with the person with whom she had only recently entered into a domestic partnership? The court's answer to this is no. There are nowhere near the indicia of such an intent being present by virtue of her occasional use of the possessive pronoun "our" with respect to certain items of property, or the offhand reference to John as her "common-law husband" or "crazy husband" on a handful of occasions. A consideration of the factors set out in *Bishop* . . . leads the court to conclude that there was no general intent on the part of Kristy to share all of her property, or the fruits of her inheritance, with John.

The superior court ultimately found that, under all the circumstances, only the Rose Lane property was intended to be joint partnership property. The court noted Kristy and John cohabited on the property; there were "[u]tility bills . . . in [John's] name"; following Kristy's knee surgery "John assisted Kristy in her rehabilitation there"; and "John worked on and made improvements to [the] property."

Kristy and John cohabited on the property, but we have "emphasize[d] that simply living together is not sufficient to demonstrate intent to share property as though married."[16] The phone and internet account in John's name was, as the court pointed out, "the rare instance of John being legally and financially responsible for any ongoing account." And Kristy removed John from the property less than two weeks after her knee surgery, minimizing any contribution he might have made during her rehabilitation. The only factor that may slightly favor John is the fifth *Bishop* factor: "contributed to the improvement and maintenance of the disputed property."[17]

---

[16]     *Id.* at 923 (quoting *Boulds*, 323 P.3d at 64).

[17]     *Bishop*, 54 P.3d at 811, *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915 (Alaska 2018).

We have affirmed a finding of intent to share domestic partnership property, for example, upholding the award of half of a house's value to each party after a roughly eight-year cohabitation.[18] One party purchased a home, and the second party's name was not added to the property title because of a previous default on a mortgage.[19] The second party contributed to the down payment and closing costs, paid a weekly sum greater than the monthly mortgage payment, and made home renovations involving the "kind of significant planning and design decisions . . . that only a homeowner would make."[20]

The parties agreed that John did some work at the Rose Lane property, but they disputed the value and necessity of his work. The court made no credibility determination for the disputed contributions, merely saying "John worked on and made improvements to this property." John did not contribute to the down payment or closing costs. He made no consistent payments for rent or upkeep. And any improvements John made were not demonstrably extensive or significant. John's contributions, standing alone without any other *Bishop* factors weighing in his favor, do not support his claim of shared ownership.

The court based its finding of Kristy's intent to share ownership of the Rose Lane property with John primarily on her filling out a VA loan application on his behalf. The court said:

> There was an attempt, by *Kristy*, to finance the purchase of the home with a VA loan in John's name. This is the one instance in this case where John might have had an actual financial stake in a piece of property being purchased by the

---

[18] *Tolan v. Kimball*, 33 P.3d 1152, 1156 (Alaska 2001), *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915 (Alaska 2018)).

[19] *Id.* at 1152-53.

[20] *Id.* at 1154-55.

parties. The loan was not able to be obtained, for technical reasons that are not particularly germane to this discussion. (Emphasis in original.)

When denying reconsideration, the superior court noted that the VA loan "plan fell through for reasons having nothing to do with a repudiation of [Kristy's] intent [to share ownership with John]."

But the record contradicts the court's findings. Emails between the parties reflect Kristy's intent to "pay the down[]payment on a property" and "include [John] as half owner" (emphasis omitted). John indicated he had spent two weeks "setting up a loan," but he explained to her that "the V.A. loan cannot have anyone but the vet on it . . . you cannot be on with me" (emphasis omitted). Kristy responded: "I NEED to at least share in the ownership . . . . It would be foolish to do otherwise . . . . No one invests in a property [and] leaves their own name off of [t]he Deed." (Emphasis in original.) John "cancelled [his] going ahead on this property" and told her to "go ahead and do it on your own."

The record clearly indicates that Kristy was willing to share ownership in the Rose Lane property contingent on John sharing in the financial obligation and both of them being named on the property title. The loan that was to have been John's financial contribution prohibited Kristy being named as an owner; Kristy's intent to share ownership thus lapsed. Finding otherwise was clearly erroneous.

Even assuming Kristy and John's relationship rose to the level of a domestic partnership, the factors used to determine intent for property to be domestic partnership property do not support an intent to share ownership, and based on the evidence in the record finding an intent to share ownership of the Rose Lane property was clearly erroneous.

## V. CONCLUSION

The superior court's ownership equity award is REVERSED, the equalization payment judgment is VACATED, and the matter is REMANDED for further proceedings consistent with this opinion.