*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LESLIE R. WRIGHT, | ) |
| | ) Supreme Court No. S-17769 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-18-02639 CI |
| v. | ) |
| | ) O P I N I O N |
| GEORGE M. DROPIK, | ) |
| | ) No. 7600 – June 24, 2022 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kristen C. Stohler, Judge.

Appearances: Deborah Burlinski, Burlinski Law Office, LLC, Palmer, for Appellant. Dan Allan, Law Offices of Dan Allan & Associates, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices. [Henderson, Justice, not participating.]

BORGHESAN, Justice.

## I.      INTRODUCTION

A man filed suit against a former romantic partner to resolve disputes about property acquired during their relationship. The superior court ruled the parties had been in a domestic partnership, a marriage-like relationship with implications for division of the parties' property when the relationship ends. It then determined the woman owed the man for his contributions toward a Wasilla property they jointly bought and improved, an out-of-state property acquired in his name that was later sold at a loss, and veterinary

bills charged to the man's credit card.  Although it was error to determine the parties were in a domestic partnership without making predicate factual findings, this error does not affect the superior court's ruling on the Wasilla property or veterinary bills, and we affirm the superior court's decision on those points.  But the error may affect the ruling on the out-of-state property, so we remand for additional proceedings on that issue.

## II.  FACTS AND PROCEEDINGS

### A.  Relationship Between Wright And Dropik

Leslie Wright and George Dropik began a relationship in February 2015. Dropik moved into Wright's Palmer house later that year.  During their relationship, Wright worked as a hairdresser and ran a dog-breeding business while Dropik worked as a truck driver and for a construction company.  The couple ended their relationship in August 2018.

### B.  Complaint

The following month, Dropik filed a complaint to partition and sell property the parties had purchased together in Wasilla and to distribute the proceeds according to their respective interests as tenants in common.  He also claimed that Wright owed him $6,000 for charges incurred on his credit card.  Wright counterclaimed for $7,500 that she allegedly loaned Dropik so he could purchase a property in Oklahoma.  The court granted Dropik's motion to hold the net proceeds of the Wasilla property sale in escrow until after trial, scheduled to occur roughly a year later.

Wright argued in her trial brief that the parties should split the Wasilla property proceeds equally and that the credit card bills for which Dropik sought repayment reflected gifts, not loans.  Wright also asserted that she had borrowed $15,000 from her daughter to lend to Dropik for the Oklahoma property but that Dropik had repaid only $7,500; therefore Wright argued that Dropik still owed another $7,500.

Wright also contended the Oklahoma property was not jointly owned. Dropik, on the other hand, argued that Wright owed him for (1) costs associated with the Wasilla property; (2) costs associated with the Oklahoma property; and (3) veterinary bills he paid on her behalf. Dropik's trial brief also referred for the first time to the parties' having been in a "domestic relationship."

### C.    Trial

At trial the parties testified about the nature of their relationship and certain items of property. We summarize the testimony relevant to this appeal.

#### 1.    Living expenses and veterinary bills

Wright testified that when she and Dropik lived together she paid for the mortgage and utilities, including the phone bill. Dropik testified that, when he moved in, the two had an agreement that he "would pay for everything that [they] do, and [he] wouldn't pay [Wright] rent," and that they acted consistently with this agreement. Dropik tallied the amount he contributed to over $134,000, which included travel, house maintenance, dining out, and miscellaneous purchases.

The parties testified that Dropik would put veterinary bills for Wright's dog-breeding business on his credit card to receive airline miles; the parties disputed whether Wright promised to pay him back. Dropik testified that Wright had owed him $10,600 for outstanding veterinary bills and had partially paid him back in two installments of $2,000.

#### 2.    The Wasilla property

Wright and Dropik agreed that they were joint owners of the Wasilla property. Both of their names were on the title, and they planned to build a house on the property, contributing to a joint bank account to do so. Wright testified that the parties agreed to be "50-50" with respect to the Wasilla property; Dropik testified that the two

"were to split the money going in to acquire the property" and that "everything was equally split short of just a couple of payments."

The parties both presented evidence about contributions to the joint bank account and the cost of improvements to the Wasilla property, including the repair of damage from a fallen tree, the use of heavy machinery to make improvements, a concrete slab, and other miscellaneous costs.

The two ended their relationship before the house was built. They sold the property for net proceeds of $60,936.65 in September 2019. The amount was held in Dropik's counsel's trust account.

### 3. The Oklahoma property

A house in Oklahoma was acquired and titled in Dropik's name during the course of the parties' relationship. Wright obtained $15,000 for the down payment from her daughter.

The parties disputed whether the house was to be owned by Dropik only or by both of them. Wright's name was not on the house loan. Dropik testified that his name alone appeared on the loan for "financial reasons" but that they agreed to "split it and [] eventually move down there," sharing expenses 50/50. Dropik testified that they were "equally invested in it" and that Wright was "putting up half of the money." Wright testified that the parties did not discuss these arrangements beyond seemingly agreeing that they would share the property "[i]f [they] resided there." Wright was not listed on the title, which Dropik testified was because they found out at closing that he could not add her "unless [they] were both there." Wright, however, testified that she was present at the closing. Dropik added that Wright "regularly wanted [him] to add her to the title" but that they never found the time to do so. Wright testified that she never

asked to be put on the title but added that Dropik "would" have added her to the title "if [they] moved down there."

Wright and Dropik never moved into the house and instead found renters, who did not pay their rent and damaged the house, necessitating repair costs. Dropik sold the home without any involvement from Wright after their relationship ended. Dropik repaid Wright's daughter $7,500 for what he characterized as his half of the borrowed money. Wright argued, and Wright's daughter testified, that Dropik borrowed the entire $15,000, meaning Wright was still owed $7,500 for the amount she eventually repaid her daughter. Dropik claimed he lost $28,457 on the Oklahoma property and argued Wright owes him $10,478 to cover her half of those losses as a joint owner of that property.[1]

### D.    Superior Court Decision

After trial the court found that Dropik and Wright were in a domestic partnership from February 2015 to August 2018. It accepted the parties' agreement that they were joint owners of the Wasilla property and that each was entitled to half of the sale proceeds. It then found that the evidence showed Dropik had invested $15,283.15 more than Wright in the property and ruled that Wright owed Dropik half the difference: $7,641.58.

The court found credible Dropik's testimony that the two "intended to be equal partners in the Oklahoma property," finding most persuasive the fact that Dropik and Wright each paid Wright's daughter back for half of the money she loaned for the down payment. It determined that Wright owed Dropik $10,478.65 for half of the expenses and losses associated with the Oklahoma property.

---

[1]    This figure reflects Dropik's claimed loss of $28,457, less $7,500 allegedly paid by Wright toward the down payment on the property, divided by half.

Finally, the court rejected Wright's argument that Dropik paid her veterinary bills with his credit card as a gift because Wright had already repaid portions of the amount owed and had acknowledged the debt by phone and text. It found Wright still owed $5,632.45 but did not owe interest on that amount.

In sum, the court concluded that Wright owed Dropik $23,752.68, to be satisfied with the proceeds from the sale of the Wasilla property. Wright moved for reconsideration, which the court denied.

## III. DISCUSSION

On appeal Wright argues that the superior court erred by: (1) determining her relationship with Dropik was a domestic partnership; (2) distributing the proceeds from the Wasilla property sale according to domestic partnership rules; (3) miscalculating Dropik's expenditures on the Wasilla property; (4) determining she owes Dropik half of the Oklahoma property losses; and (5) awarding Dropik reimbursement for Wright's veterinary bills Dropik paid with his credit card.

We agree that the superior court's domestic partnership ruling was error because the court failed to make factual findings to support the existence of a domestic partnership. Although this error has no effect on the superior court's rulings pertaining to the Wasilla property or veterinary bills, we cannot say the same with regard to the Oklahoma property.

### A. It Was Error To Conclude That A Domestic Partnership Existed Without Making Factual Findings About The Parties' Relationship.

"A domestic partnership exists when there is an agreement between the parties to live together indefinitely and 'to share in the fruits of [their] relationship as

though they were married . . . .' "[2] " 'If the parties dispute whether a domestic partnership exists, . . . the trial court must examine if or when the parties cohabited in a marriage-like relationship,' including consideration of factors we articulated in *Bishop v. Clark*."[3] The so-called *Bishop* factors include:

> whether the parties have (1) made joint financial arrangements such as joint savings or checking accounts, or jointly titled property; (2) filed joint tax returns; (3) held themselves out as husband and wife; (4) contributed to the payment of household expenses; (5) contributed to the improvement and maintenance of the disputed property; and (6) participated in a joint business venture. Whether they have raised children together or incurred joint debts is also important.[4]

Although the Bishop factors "may inform" the analysis of whether parties were in a domestic partnership, the factors "are not exclusive."[5]

If the court determines that a domestic partnership existed, it must then classify each item as partnership property or as separate property.[6] Absent a statute or contract to the contrary, property is strictly classified according to the domestic partners'

---

**2** *McConville v. Otness*, 498 P.3d 632, 635 (Alaska 2021) (alteration in original) (quoting *Bishop v. Clark*, 54 P.3d 804, 810-11 (Alaska 2002), *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915 (Alaska 2018)).

**3** *McConville*, 498 P.3d at 635 (quoting *Tomal*, 426 P.3d at 922 n.4).

**4** *Bishop*, 54 P.3d at 811.

**5** *Tomal*, 427 P.3d at 922 n.4.

**6** *Id.* at 923.

intent.[7] In domestic partnership cases "[w]e have rejected . . . the rule that the party who has title or possession is necessarily entitled to ownership of property, because that rule 'tends to operate purely by accident or perhaps by reason of the cunning, anticipatory designs of just one of the parties.' "[8]

Property belonging to the partnership "generally must be distributed equally (or unequally if the parties intended unequal shares), while separate property must be distributed solely to its owner."[9] By contrast, if the court finds that the parties were not in a domestic partnership, ordinary property rules apply to determine ownership.[10] We review the trial court's factual findings about intent for clear error; its classification

---

[7] Although we have directed courts to consider the *Bishop* factors both when deciding whether a domestic partnership existed and when determining domestic partners' intent for specific items of property, *McConville*, 498 P.3d at 635-36, some *Bishop* factors may be more relevant to the first inquiry and others to the second. For example, whether parties held themselves out as husband and wife is quite relevant to whether they were in a marriage-like relationship, but ordinarily not so relevant to whether a particular vehicle was intended to be property of the partnership. We emphasize that the *Bishop* factors are not exclusive, that "[e]ven when factors tilt heavily toward finding partnership property, other evidence may show that the parties had no such intent for particular pieces of property." *Id.* at 636. The question of intent for each disputed item is ultimately to be "based on the totality of the circumstances." *Id.* at 635 (quoting *Boulds v. Nielsen*, 323 P.3d 58, 64 (Alaska 2014), *abrogated on other grounds by Tomal*, 426 P.3d 915.

[8] *Jaymot v. Skillings-Donat*, 216 P.3d 534, 544 (Alaska 2009) (quoting *Tolan v. Kimball*, 33 P.3d 1152, 1156 (Alaska 2001) (per curiam)).

[9] *McConville*, 498 P.3d at 636 (quoting *Tomal*, 426 P.3d at 924).

[10] *Cf. D.M. v. D.A.*, 885 P.2d 94, 97 (Alaska 1994) ("If an intent to hold the property in a particular proportion or to determine the proportion by a particular method can be discovered, this intent controls over the regular rules of cotenancy.").

decisions based on statute, contract, or intent are legal questions that we review de novo.[11]

Wright argues the superior court erred by ruling the parties were in a domestic partnership. Although at trial Wright did not challenge Dropik's assertion of a domestic partnership, we may consider on appeal her argument that the evidence is not sufficient to support the court's finding.[12] The superior court concluded that the two were in a domestic partnership without explaining why. In *Jaymot v. Skillings-Donat* we vacated a property distribution decision "[b]ecause the evidence [was] conflicting on key *Bishop* factors and because there [were] not sufficient findings to allow our review of [the superior court's] determination of the parties' intent" regarding domestic partnership.[13] The same problem exists here.

Wright points to evidence — which the superior court did not discuss in its domestic partnership determination — that she believes weighs against finding she was in a domestic partnership with Dropik. The parties owned their own homes even after moving in together, with Dropik eventually renting his out. At trial both parties referred to Dropik as Wright's former "boyfriend." The only shared bank account was the one opened to handle the Wasilla property expenses, and the two otherwise maintained separate bank accounts and credit cards. There is no indication the parties filed a joint

---

[11]     *Tomal*, 426 P.3d at 923.

[12]     *See* Alaska R. Civ. P. 52(b) ("When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment.").

[13]     216 P.3d at 546.

tax return. Dropik acknowledged in his testimony that although he provided minor assistance to Wright's dog-breeding business, the business remained hers. The pair had no children together; they resided together for roughly three years, which Wright characterizes as "short."

Dropik counters that "[a]mple evidence" supports the trial court's domestic partnership finding, including the facts that they lived together, were in a romantic relationship, had a joint bank account and made joint financial decisions such as purchasing property together, and shared living expenses.

As in *Jaymot*, the superior court failed to make findings about key *Bishop* factors. It did not determine if Dropik and Wright held themselves out as husband and wife. It made no findings about their tax returns, how the parties handled payment of household expenses, or whether they had a joint business venture. Without factual findings about the parties' interactions, it is not possible for us to determine on appeal whether they cohabited "in a marriage-like relationship."[14] It was therefore error to determine that a domestic partnership existed without making any predicate factual findings.[15]

---

[14]  *McConville*, 498 P.3d at 635.

[15]  *See In re Estate of Rodman*, 498 P.3d 1054, 1073 (Alaska 2021) ("[T]he superior court commits legal error if it 'fails to make factual findings appropriate to the relevant legal test.'" (quoting *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Corp.*, 129 P.3d 905, 916 (Alaska 2006))); *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) ("Whether there are sufficient findings for informed appellate review is a question of law." (quoting *Horn v. Touhaskis*, 356 P.3d 280, 282 (Alaska 2015))).

**B.    The Domestic Partnership Error Does Not Affect The Court's Distribution Of Proceeds From The Wasilla Property.**

"Property acquired by domestic partners during a domestic partnership should be distributed according to the partners' intent."[16] Under the ordinary rules of Alaska property law, courts are to divide jointly titled real property under the presumption that the titleholders own equal shares, absent a showing that one titleholder "contributed unequally."[17] But "[i]f an intent to hold the property in a particular proportion or to determine the proportion by a particular method can be discovered, this intent controls over the regular rules of [property division]."[18] Because the court found the parties agreed to invest equally in and own equal shares of the Wasilla property, applying the domestic partnership framework leads to the same result as applying a tenancy-in-common framework. Therefore the failure to make sufficient findings to support the existence of a domestic partnership has no bearing on the distribution of this property.

Although the parties agreed that they jointly owned the property and intended to invest in it equally, they do not agree with respect to Dropik's claim that Wright owes him money because he ultimately contributed more money to the property. He seeks reimbursement for these allegedly disproportionate contributions.

Wright first takes issue with the superior court's calculation of Dropik's expenditures related to the property. She argues that there is no support in the record for Dropik's claim that he forfeited a paycheck of $16,195.52 to his employer in exchange

---

[16]    *Tomal*, 426 P.3d at 923.

[17]    *D.M. v. D.A.*, 885 P.2d 94, 97 (Alaska 1994).

[18]    *Id.*

for the right to use his employer's heavy equipment on the property. We see no clear error.[19] Dropik testified about this exchange several times, and Wright herself acknowledged these expenses in her testimony.

Wright next argues, citing *Wood v. Collins*, that the court should not have required her to reimburse Dropik for his greater contributions because doing so would be inequitable.[20] In *Wood* the superior court found that the parties jointly owned a condominium as tenants in common and ordered them to sell it.[21] The condominium required renovations before sale, and one party undertook the necessary renovations himself.[22] We affirmed the superior court's decision to allocate 50% of the renovation cost to each party, rejecting the argument that this allocation was inequitable, because "both parties benefitted from the expenditure [on renovations] upon the condominium's sale."[23]

Wright fails to explain why it would be inequitable to require her to reimburse Dropik for half of his greater expenditures to equalize the parties' investment

---

[19]    *See Thompson*, 454 P.3d at 988-89 (holding that in division of marital property, valuation of property is a factual finding reviewed for clear error, which exists "when a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake" (alteration in original) (quoting *Geldermann v. Geldermann*, 428 P.3d 477, 481 (Alaska 2018))).

[20]    812 P.2d 951, 959 (Alaska 1991) ("The right to reimbursement is an equitable right and recovery should be just and equitable under all the circumstances.").

[21]    *Id*. at 953.

[22]    *Id.* at 953-54.

[23]    *Id*. at 959.

in the property.[24]  The *Wood* decision actually supports the superior court's conclusion to allocate these expenses equally.  Therefore we do not disturb the superior court's conclusion regarding the Wasilla property, despite the erroneous domestic partnership conclusion.

C.    **The Domestic Partnership Error Does Not Affect The Ruling On Veterinary Bills.**

The superior court ruled that Wright owed Dropik $5,632.45 for veterinary bills Dropik paid with his credit card, finding that the parties had agreed Dropik would pay these bills with his credit card to earn airline miles and Wright would repay him when she could.[25]  Whether the parties were in a domestic partnership or not, the nature of these payments — loan or gift — depends on the parties' intent.[26]  Therefore the domestic partnership error does not affect the superior court's ruling on this point.

Wright argues the superior court's intent finding is clearly erroneous because of Dropik's testimony that he agreed to pay for "everything else" aside from the mortgage and utilities when he was living with Wright; she argues that "everything else" should include the veterinary bills.  But the superior court found Dropik's account more credible because Wright had already paid back $4,000 of the $9,632.45 in veterinary

---

[24]    It is unclear whether the equitable analysis applied in *Wood* to an action for contribution among tenants in common would apply to domestic partners.  For purposes of this case we assume without deciding that it does.

[25]    The superior court rejected the notion that Wright would pay interest on the borrowed amounts as unsupported by the record.

[26]    *See Tomal v. Anderson*, 426 P.3d 915, 923 (Alaska 2018) (holding that in domestic partnership case, "property must be classified strictly according to the parties' intent"); *Osterkamp v. Stiles,* 235 P.3d 178, 191 (Alaska 2010) (holding superior court did not clearly err in finding that transfers of funds from parents to child were loans, not gifts, based on evidence showing that parents "intended to be repaid").

bills charged on Dropik's credit card and because she had acknowledged the debt by phone and text after the relationship ended.

The superior court's finding that the parties intended a loan is not clearly erroneous — particularly given the great weight we afford to credibility determinations based on oral testimony.[27] Dropik's testimony that he paid for "everything else" could reasonably have referred to their normal living expenses, not expenses related to a business that, according to his testimony, he "had nothing to do with" and received "no benefit" from. Reviewing the record in the light most favorable to Dropik as the prevailing party, we cannot say the superior court clearly erred.[28]

D.     **The Distribution Of The Oklahoma Property Expenses Was Potentially Affected By The Erroneous Domestic Partnership Ruling.**

The domestic partnership error may affect the superior court's ruling on the Oklahoma property, requiring reversal on this point.

If a domestic partnership exists, "absent a controlling statute or a valid contract between the parties, property must be classified strictly according to the parties' intent."[29] In domestic partnership cases "[w]e have rejected . . . the rule that the party who has title or possession is necessarily entitled to ownership of property, because that

---

[27]     *See Gavora, Inc. v. City of Fairbanks*, 502 P.3d 410, 418-19 (Alaska 2021) ("[T]rial courts are best suited to weigh evidence and determine the credibility of witnesses who provide oral testimony. . . . '[W]e will generally accept the determination[s] of witnesses' credibility that are made by the [superior] court . . . [because] the court heard and observed the witnesses first hand.'" (third, fourth, and fifth alterations in original) (quoting *Demoski v. New*, 737 P.2d 780, 784 (Alaska 1987))), *reh'g denied* (Feb. 3, 2022).

[28]     *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003).

[29]     *Tomal*, 426 P.3d at 923.

rule 'tends to operate purely by accident or perhaps by reason of the cunning, anticipatory designs of just one of the parties.' "[30]

If no domestic partnership exists, a different framework applies: "There is a presumption that the person with title [to real property] owns the property."[31] Although some evidentiary presumptions evaporate upon the introduction of any admissible evidence to rebut the presumed fact — which Dropik has done here with respect to joint ownership of the property — the title presumption is more substantial, shifting the burden of proof to establish ownership of disputed property. Because the title presumption that would apply if no domestic partnership exists changes the way the court must weigh evidence about ownership of the property, we cannot say that the superior court's domestic partnership error is harmless.

The court rule that governs evidentiary presumptions provides that in general an evidentiary presumption may be rebutted by "the introduction of evidence sufficient to permit reasonable minds to conclude" otherwise,[32] after which "the presumption vanishes."[33] This kind of presumption is referred to as a "bursting bubble": once the party against whom the presumption operates introduces evidence sufficient to permit the inference of the opposite fact — a relatively light burden roughly equivalent

---

[30]     *Jaymot v. Skillings-Donat*, 216 P.3d 534, 544 (Alaska 2009) (quoting *Tolan v. Kimball*, 33 P.3d 1152, 1156 (Alaska 2001) (per curiam)).

[31]     *Pestrikoff v. Hoff*, 278 P.3d 281, 284 (Alaska 2012).

[32]     Alaska R. Evid. 301(a).

[33]     Alaska R. Evid. 301(a) comment.

to defeating summary judgment[34] — the presumption "bursts" and disappears, like a bubble, and the court must simply weigh the evidence presented.[35]

But this general presumption operates only "when not otherwise provided for by statute[ or] by judicial decision."[36] And a line of decisions dating back to the nineteenth century supports the notion that the title presumption is stronger than the general "bursting bubble" presumption.

*Sugg v. Morris* appears to be the first decision by our court applying the title presumption.[37] In that case the superior court awarded an unmarried woman a share of ownership in a house titled solely in the name of the man with whom she had a romantic relationship.[38] We reversed and held that because they were not in a "marriage-like" relationship, the "only interest which the plaintiff possessed in the property was that of a beneficiary *pro tanto* under a resulting trust."[39] Therefore "the burden fell upon her to show . . . the precise amount contributed by herself," reasoning that "the presumption that the defendant in whose name the legal title to the property is vested is the absolute

---

[34]     *See* Alaska R. Civ. P. 56(c) (requiring "showing that there is no genuine issue as to any material fact" for summary judgment).

[35]     *See Cynthia W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 497 P.3d 981, 985 (Alaska 2021) (explaining operation of "bursting bubble" presumption framework).

[36]     Alaska R. Evid. 301(a).

[37]     392 P.2d 313, 316 (Alaska 1964); *see also Kiernan v. Creech*, 268 P.3d 312, 315 n.6 (Alaska 2012) (acknowledging title presumption exists, referencing *Sugg*).

[38]     *Sugg*, 392 P.2d at 316.

[39]     *Id.*

owner thereof may not be overcome by mere surmise or conjecture."[40] We applied this rule in later decisions, albeit without elaborating further on the quantity or quality of evidence needed to defeat the title presumption.[41]

The reasoning in *Sugg* was drawn from the California Supreme Court's decision in *Keene v. Keene*.[42] In *Keene* the court explained the relatively stringent burden facing one who claims an interest in a property titled solely in another's name, invoking the "familiar" rules that "it is incumbent upon him who would claim that a trust exists in his favor to establish the fact by clear, convincing, and unambiguous testimony" and that the presumption of title "is not to be overcome by surmise or conjecture."[43] These rules, in turn, were drawn from the California Supreme Court's 1895 decision in *Woodside v. Hewel*.[44]

This longstanding precedent establishes a special evidentiary presumption when title to real property is at issue. This title presumption does not operate like a "bubble" that "bursts" upon presentation of contrary evidence, but instead operates more

---

[40] *Id.*

[41] *See, e.g.*, *Pestrikoff v. Hoff*, 278 P.3d 281, 286 (Alaska 2012) (holding in appeal of probate matter that deceased's children claiming boats titled solely in deceased's widower's name were property of deceased's estate did not rebut the title presumption because they did not "offer[] specific evidence to the contrary"); *St. Paul Church, Inc. v. Bd. of Trustees of Alaska Missionary Conf. of the United Methodist Church, Inc.*, 145 P.3d 541, 554 (Alaska 2006) (observing that evidence titleholder held property in trust for affiliated organization "far surpasse[d] mere surmise or conjecture").

[42] 371 P.2d 329 (Cal. 1962), *quoted in Sugg*, 392 P.2d at 316.

[43] *Keene*, 371 P.2d at 334 (quoting *Woodside v. Hewel*, 42 P. 152, 152 (Cal. 1895)).

[44] 42 P. at 152.

akin to "plac[ing] the burden of proof on the party opposing the fact presumed to establish its non-existence."[45] The title presumption therefore remains operative even if a party introduces evidence to rebut the presumed fact, as Dropik did here. The presumption changes how the court must weigh the evidence.

The superior court determined that Wright and Dropik were in a domestic partnership, so it did not apply the title presumption when weighing the evidence of joint ownership. We cannot say whether applying this presumption would lead the court to reach a different finding about the parties' intent. Therefore it is possible that the error in declaring a domestic partnership without predicate factual findings affects the proper disposition of this case.

Accordingly, we vacate the court's ruling regarding the Oklahoma property and remand for the court to first determine, after making the necessary factual findings, whether a domestic partnership existed. If so, the court's ruling regarding the Oklahoma property remains valid. If not, then the court must apply the presumption described above, and weigh the evidence introduced by Dropik accordingly, to determine whether the parties jointly owned this property.

## IV.    CONCLUSION

We AFFIRM the superior court's judgment with respect to the Wasilla property and veterinary bills. We VACATE the ruling regarding the Oklahoma property and REMAND for additional findings consistent with this opinion.

---

[45]    Alaska R. Evid. 301(a) comment.