Anthony E. REED, Appellant,

v.

Stephanie E. PARRISH, Appellee.

No. S–14053.

Supreme Court of Alaska.

Oct. 19, 2012.

Anthony E. Reed, pro se, Anchorage, Apellant.

Goriune Dudukgian, Alaska Legal Services Corporation, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

# I. INTRODUCTION

This appeal concerns the property division between a couple who had been in a relationship for 12 years but never married. The couple and their children resided in a home titled in the man's name. After they separated, pursuant to a domestic violence protective order, the man paid the mortgage while the woman lived in the home with the children. The man filed for custody of the children and the woman counterclaimed for custody and asserted that the parties' property should be divided by the court. The superior court found that the parties were in a domestic partnership and intended to acquire property as though married. It then proceeded to equally divide the property, but considered the post-separation mortgage payments a part of the domestic violence protective order and the equivalent of spousal support. Therefore it did not take them into account when dividing the property. The man appeals, arguing that the superior court erroneously concluded that the parties intended to be in a domestic partnership and that the superior court improperly failed to credit him

for mortgage payments made after the separation. Because the superior court properly found that the parties intended to be in a domestic partnership and that the post-separation mortgage payments were made pursuant to a domestic violence protective order, we affirm the superior court.

# II. FACTS AND PROCEEDINGS

## A. Facts

Anthony Reed and Stephanie Parrish were in a romantic relationship from 1998 until May 2009. They were never married, but Stephanie wore an engagement ring given to her by Anthony. They have two children together.[1] In May 2009 their relationship ended, and Anthony filed for custody of the children.

Shortly after their relationship began in 1998, Anthony moved into the condominium that Stephanie leased. Anthony was not on the lease. In 2000 the two jointly leased a duplex. They later moved to a house that was purchased in Anthony's name only.

When the relationship began Stephanie owned a hair salon while Anthony worked seasonally. Stephanie testified that the bills were paid by her when she had money and by him when he had money. She also gave Anthony money to purchase a snowmachine and other personal items. After the birth of their second child, Anthony and Stephanie decided that Stephanie would stop working and close her salon while Anthony worked as a long-haul trucker. Until the couple separated in May 2009, Stephanie cared for the children and the house; when their youngest child started school, she obtained a part-time job as a teacher's aide. The couple had separate bank accounts, but Anthony was largely responsible for the bills and would deposit money into Stephanie's account.

The relationship was not without trouble. In 2001 Anthony pled no contest to an assault on Stephanie and was ordered to complete anger management and alcohol treatment. The couple separated from November 2005 to November 2006 and, during this time, Stephanie sought and obtained a child sup-

---

1. Stephanie also had a child from a previous relationship who lived with the family.

port order. When the couple resumed their relationship the order was suspended.

In 2007 the couple purchased a house. It was titled solely in Anthony's name, apparently because Anthony qualified for a favorable loan through his Native corporation. Stephanie testified that "it just made sense for me not to be on the title ... [b]ut it was always ... a discussion of, you know, we were together and it was my house and if anything were to ever happen to him, it would be my house...." She further testified that she found the listing for the house on Craigslist, met with the sellers (with Anthony), and paid $1,000 towards the earnest money. Stephanie also assisted in a needed roof repair and generally took care of the house by purchasing furniture, redecorating, painting, and replacing broken appliances.

Over the course of the relationship the two made several joint purchases and filled out other paperwork together. Notably, in August 2008, Anthony signed an affidavit of domestic partnership so that Stephanie could obtain insurance benefits. They purchased, registered, and obtained insurance on a 2001 Chevrolet Yukon in both their names. Stephanie was listed as a dependent on Anthony's taxes, but she did not claim him as a dependent. Stephanie testified that Anthony told her she was the beneficiary of his life insurance policies. They maintained a joint email account. They also referred to each other, in public, as husband and wife, and did not correct others who assumed they were married. Anthony gave Stephanie a card addressing her as "wife."

After the couple ended their relationship they continued to live in the family home together. However, in June 2009, Stephanie obtained an ex parte domestic violence protective order against Anthony. In this order Stephanie was awarded possession of the family home, and Anthony was directed to continue making the mortgage payments.

### B. Proceedings

In May 2009 Anthony sought custody of the children. Stephanie counterclaimed, asserting that the "parties [had] acquired property during [the] relationship, the rights to which need to be adjudicated by [the] court." She sought an order dividing the parties' property. A trial on the issues of custody and distribution of property was held before Superior Court Judge John Suddock.

Anthony argued that there was no intent to form a domestic partnership and therefore the house was his separate property. Stephanie argued that the house, and other property acquired during the relationship, should be divided based on their intent to "share equally in the fruits of their relationship." The superior court found that the two had formed a domestic partnership and that *Bishop v. Clark*[2] applied to the division of property.

The major asset was the house. The parties stipulated that it was valued at $267,000. Anthony also had a retirement account valued at $3,532. The parties argued over other property items, including tools and recreational vehicles. The superior court sought to achieve a 50/50 split of the assets and debts in the relationship. It awarded the family home to Anthony, and the parties each received half the value of the equity.

Anthony sought reimbursement for mortgage payments made after the separation, which was denied. The superior court found that the payments were made pursuant to a domestic violence protective order and were "a functional equivalent of interim spousal support, required under the circumstances to permit the parties an orderly determination of their property rights."

Anthony appeals, arguing that the court erroneously found the parties were in a domestic partnership under the *Bishop* factors and that the property was therefore improperly divided. He also argues that the superior court impermissibly failed to credit him for mortgage payments made after the separation.

### III. STANDARD OF REVIEW

We review the application of law to facts, such as the parties' intent regarding

---

**2.** 54 P.3d 804, 811 (Alaska 2002). *Bishop* establishes factors for determining the intent of cohabiting parties as to the distribution of property acquired during their relationship. *Id.*

ownership of property acquired during cohabitation, de novo.[3] "[A]wards of . . . interim spousal support . . . are left to the sound discretion of the trial court and will be reversed only if we find an abuse of discretion." [4] We review the superior court's procedural decision regarding post-separation mortgage payments for an abuse of discretion.[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Finding The Parties Intended To Share The Fruits Of Their Relationship As If Married.

■ Anthony argues that the superior court mischaracterized the property at issue in this case because there was no domestic partnership. He argues that there was no intent to form a domestic partnership because among other things the couple did not file joint taxes, there was no joint business venture, he paid most of the household expenses, and it was an intermittent relationship during which he was subject to a child support order. Stephanie asserts that there was an "intent to share the fruits of their relationship as if married." The superior court found that the couple was in a domestic relationship and intended to acquire property as though married, and therefore divided the property equally.

■ We agree with the superior court that the parties formed a domestic partnership and intended to share in the fruits of their relationship as though married, justifying an equal division of their property.[6] "[P]roperty accumulated during a period of [unmarried] cohabitation should be divided according [to] the parties' intent. . . ." [7] In *Bishop v. Clark* we articulated several factors that a court may look to when determining the parties' intent. A court in such a situation asks if the parties:

(1) made joint financial arrangements such as joint savings or checking accounts, or jointly titled property; (2) filed joint tax returns; (3) held themselves out as husband and wife; (4) contributed to the payment of household expenses; (5) contributed to the improvement and maintenance of the disputed property; . . . (6) participated in a joint business venture[; and (7)] raised children together or incurred joint debts.[8]

Stephanie presented significant evidence that suggests the parties intended to share property as though married. They made many joint financial decisions: They jointly leased an apartment; they jointly purchased a vehicle and obtained insurance for it, even reporting their marital status as "M" on the paperwork; and Stephanie was listed as a dependent on Anthony's tax returns. Not only did they make significant joint financial decisions, but throughout the relationship both parties contributed to the household. For example, prior to closing her salon, Stephanie would pay bills when she had money and Anthony would pay when he had money, but they agreed they were jointly responsible. Stephanie, in consultation with Anthony, quit her job to care for the children. The couple also held themselves out as married on several occasions. Anthony gave Stephanie a card titled "For My Wife." Their friends thought they were married and they referred to each other as husband and wife in public.

Several other facts support a finding that the parties were in a domestic partnership and intended to share property as though married. They signed a health insurance domestic partnership affidavit to obtain coverage. The purchase of the house also indicates the joint nature of the parties' relationship. They looked for housing together, Stephanie found the listing on Craigslist,

---

3. *Jaymot v. Skillings–Donat,* 216 P.3d 534, 539 (Alaska 2009) (citing *Bishop,* 54 P.3d at 810–11).

4. *Hanson v. Hanson,* 125 P.3d 299, 304 (Alaska 2005) (citing *Beal v. Beal,* 88 P.3d 104, 110 (Alaska 2004)).

5. *Rockstad v. Erikson,* 113 P.3d 1215, 1219–20 (Alaska 2005).

6. *See, e.g., Julsen v. Julsen,* 741 P.2d 642, 645 (Alaska 1987) ("We have repeatedly held that an equal division of [marital] property [in a divorce] is presumptively valid.").

7. *Tolan v. Kimball,* 33 P.3d 1152, 1154 (Alaska 2001).

8. *Bishop,* 54 P.3d at 811 (footnotes omitted).

and they met the sellers together. She also contributed earnest money towards the purchase. Ultimately they decided, together, that it should be titled in Anthony's name to gain favorable financing. After the purchase, Stephanie acted as a co-owner of the house. She helped replace the roof, painted the house, redecorated the rooms, and purchased furniture for the rooms. Finally, Anthony and Stephanie raised two children together, and Anthony also helped raise Stephanie's child from a previous relationship.

Anthony argues that there were very few joint financial decisions because he paid most of the bills, they did not have joint checking or other financial accounts, and they did not file joint tax returns. However, his argument misinterprets the import of the listed *Bishop* factors. First, the factors are not exclusive;[9] they reflect the factual circumstances of the case—in *Bishop* the parties happened to have formalized financial arrangements that indicated financial interdependence.[10] Here, Stephanie and Anthony had not formalized their arrangements but were still financially interdependent. As noted above, the couple made many joint financial decisions. The fact that they did not have a joint bank account does not defeat the couple's intertwined financial decision-making.

Although there are some indications that the parties may not have intended to equally share property, such as a lack of a joint checking account and Stephanie's sole proprietorship of her salon, as a whole the evidence suggests the opposite. The contrary evidence that does exist likely results from the fact that the parties simply did not integrate all of their financial matters. We affirm the superior court's finding of a domestic partnership.

### B. The Superior Court Did Not Abuse Its Discretion In Not Crediting Anthony For Post–Separation Mortgage Payments.

■ Anthony argues that the superior court erred in denying him credit for half of the post-separation mortgage payments, a total of $7,320. Stephanie argues that the superior court properly declined to credit Anthony because he paid the mortgage pursuant to a domestic violence protective order and requiring a domestic violence victim to reimburse her abuser would frustrate the policies behind the relief offered under the domestic violence statutes. The superior court did not credit Anthony's post-separation mortgage payments, finding that the payments were made pursuant to a domestic violence protection order and that they were the "functional equivalent of interim spousal support."

The superior court properly determined Anthony should not receive credit for the post-separation mortgage payments. Under AS 18.66.100(b) the superior court may provide a broad range of relief to a victim of domestic violence, including, "remov[ing] and exclud[ing] the [perpetrator] from the residence of the [victim], regardless of ownership of the residence,"[11] and "order[ing] other relief the court determines necessary to protect the [victim] or any household member."[12] After a contested hearing, the issuing court found it necessary to award possession of the house to Stephanie while Anthony continued paying the mortgage, as he had been doing prior to the separation. This was well within the discretion of the issuing court as "other relief the court determines necessary."[13] Accordingly, it was proper for the court in the instant case to decline to credit those mortgage payments. To find otherwise would disrupt the relief given Stephanie under the domestic violence protective order.

Further, the post-separation mortgage payments maintained the status quo, ensuring that the children's stability was maximized while the parties litigated their dispute. The parties had long structured their relationship with Stephanie staying home to raise

9. *Id.* ("In determining the intent of cohabitating parties, courts consider, *among* other factors....") (emphasis added).

10. *Id.* (commingling of income; joint checking accounts; raising children together).

11. AS 18.66.100(c)(3).

12. AS 18.66.100(c)(16).

13. *Id.*

the children. To disrupt that arrangement during the pendency of the court hearing would have been unfair to the children and was contrary to the intent of the parties. Additionally, we have held that the superior court has significant discretion to characterize money paid pursuant to a domestic violence order as it sees proper in the circumstances.[14] While the superior court could have credited Anthony's payments, it was not an abuse of discretion to decline to do so.

Finally, despite Anthony's argument to the contrary, *Wood v. Collins* [15] is not controlling in this case. In that case, we held that the rules of cotenancy governed post-separation mortgage payments and accordingly, the non-occupant cotenant was entitled to credit for his payments on the property.[16] Although there are some similarities, namely, in both cases unmarried couples intended to jointly own property which one was occupying (in *Wood*, the title was in both names),[17] there are some crucial differences. First, in *Wood*, the payments covered an extended period of time—over three years.[18] Here, in contrast, there were no long-term payments, only interim payments that allowed the children to stay in the house through the holiday season. Second, in *Wood*, the occupying cotenant excluded the other from the premises without benefit of legal process.[19] Here, Anthony was not ousted by Stephanie, but rather by the court as a result of the domestic violence protective order. Finally, the payments were made pursuant to that order and for the purpose of maintaining the children's residence.

Because the payment of the mortgage was required by the domestic violence protective order, which makes no distinctions based on marital status, and the payments allowed the parties to maintain stability for the children as long as possible, we affirm the superior court's decision not to credit Anthony for the post-separation mortgage payments.

## V. CONCLUSION

We AFFIRM the superior court's conclusions that there was a domestic partnership in which the parties intended to share property as though married and that Anthony was not entitled to credit for the post-separation mortgage payments.

---

14. *Stevens v. Stevens,* 265 P.3d 279, 288–89 (Alaska 2011) (superior court may characterize spousal support granted in domestic violence protective order as property which should be credited against the victim at time property is distributed).

