NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

KATHIJO MARI JOLIN, )
                           ) Supreme Court No. S-18530
           Appellant, )
                           ) Superior Court No. 3AN-21-08392 CI
     v. )
                           ) MEMORANDUM OPINION
MICHAEL WILLIAM JOLIN, ) AND JUDGMENT*
                           )
           Appellee. ) No. 2049 – October 16, 2024
                           )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Kathijo Jolin, pro se, Anchorage, Appellant. Maurice N. Ellis, Law Office of Maurice N. Ellis, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

Following divorce proceedings, one party appeals various aspects of the superior court's division of marital property. Observing no error or abuse of discretion, we affirm the court's property division order in all respects.

---

\* Entered under Alaska Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

Michael and Kathijo Jolin married in January 2003,[1] after dating intermittently for several years. They raised four children together. Michael filed for divorce in September 2021.[2]

### A. Interim Proceedings

Between Michael's filing of his divorce complaint and the time of the parties' final divorce trial, the parties litigated a number of interim issues including sale of the marital home, interim support, attorney's fees, and sanctions. These issues are discussed in turn.

#### 1. Marital home

In 2011 the parties purchased a home together. In September 2021 Kathijo and Michael signed an exclusive agency contract with a realty company, at which point Kathijo moved out of the residence. Kathijo later decided she did not want to sell the home. In November 2021 she formally opposed the sale, claiming she was "railroaded" into signing the agreement by Michael and his lawyer. Michael asked the court to compel the sale of the home. He disputed Kathijo's assertion that she had been "railroaded" into the agreement and pointed out that the parties would still owe their real estate agent a commission of $31,950 even if the sale fell through. Michael sought expedited consideration on the matter given this potential liability.

The court considered both parties' positions, granted expedited consideration, and compelled the sale. Michael was given signing authority to complete

---

[1] Because the parties have the same last name, we refer to them by first name for clarity.

[2] All of the children reached the age of majority prior to the end of the divorce proceedings.

the sale without Kathijo's consent. He sold the house in January 2022, with net proceeds of $140,633.47.[3]

### 2. Interim spousal support and attorney's fees

In September 2021 Michael paid Kathijo $2,000 as part of a "one-time lump sum" payment in contemplation of divorce. Kathijo signed an agreement that the sum would be counted as an "early property distribution within the parties' final property division."

In November 2021 Kathijo sought $5,000 in interim spousal support and $20,000 in interim attorney's fees. Michael opposed Kathijo's request, stating that his monthly expenses exceeded his monthly salary and that, as a result, he was unable to afford the requested award. He also noted the parties' most significant asset was the marital home, which was already on the market at the time. He asked the court to deny an award of interim attorney's fees and spousal support in light of the money Kathijo would receive when the sale of the marital home went through.

The court denied Kathijo's motion in part. It ordered that once the parties' home was sold, the proceeds of that sale would be placed in trust pending the court's division of the parties' property. Michael was ordered to pay Kathijo $2,500 a month as interim support until the house sale was finalized, at which point Kathijo was permitted to withdraw up to $5,000 a month from the proceeds held in trust. The court indicated that the payments from Michael and from the trust would be treated as a pre-distribution to Kathijo from the marital estate.

In its final order dividing the parties' property, the court credited Michael for the early $2,000 payment as well as for the other payments Michael made under the court's interim support order. It also awarded Kathijo all of the proceeds from the sale of the marital home, but noted that the "downside" of this award of cash was that

---

[3] The court ultimately awarded all of these proceeds to Kathijo, given Michael's higher salary and greater earning capacity.

Kathijo would not be provided attorney's fees or long-term spousal support — including support for educational training — because she could instead use the cash to fund her expenses, fees, and education.

### 3. Sanctions

On January 11, 2022, Kathijo's attorney filed a motion urging that Michael should be held in contempt for violating a 2021 standing domestic relations order by "cancel[ing] the vehicle insurance policy that covered Kathijo" and her children. The 2021 order prohibited either party from canceling, changing, or stopping payment on any insurance policy. On January 12, Kathijo's attorney filed an erratum to his motion acknowledging that Michael did not cancel the insurance policy but merely divided the policy into two separate policies. Michael filed a cross-motion for attorney's fees pursuant to Alaska Civil Rule 11.[4]

The court denied Kathijo's motion because it found Michael had not violated the standing domestic relations order. Instead Michael had "simply removed his own vehicle and the children's vehicles from the policy so that Ms. Jolin would not have to pay for them during the interim pendency of this case." The court also noted Kathijo's attorney "made no independent effort to investigate the claims before filing the motion as required by Alaska Civil Rule 11(b)."[5] Since the error could have been

---

[4] Rule 11 imposes affirmative obligations on lawyers and unrepresented parties, including assuring that factual assertions made in court filings have evidentiary support. *See* Alaska R. Civ. P. 11(b)(3).

[5] "By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support." Alaska R. Civ. P. 11(b).

resolved "by making a simple phone call to either Mr. Jolin's attorney or to the insurance company," the court imposed Rule 11 sanctions against Kathijo's counsel.[6]

## B. Divorce Trial And Decision On Record

The court oversaw seven days of trial that included testimony from six witnesses before it issued a decision on record in June 2022.[7] It awarded Kathijo 60% of the value of the marital estate, mostly consisting of the cash she received from the sale of the marital home and from her portion of Michael's 401(k). It also declined to award Kathijo long-term spousal support or rehabilitative alimony, and noted our precedent supporting its award of cash in lieu of this support.[8]

Relevant to this appeal, the parties presented evidence about, and the court decided, several additional property-related issues.

---

[6] Although Kathijo argues the court erred by imposing Rule 11 sanctions, we do not address this issue because Kathijo lacks standing to appeal the court's imposition of sanctions against her former attorney. *See Keller v. French*, 205 P.3d 299, 304 (Alaska 2009) ("To establish interest-injury standing plaintiffs must demonstrate that they have a 'sufficient personal stake' in the outcome of the controversy." (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1040 (Alaska 2004))). Moreover, Kathijo failed to discuss this issue in her opening brief, so it is waived. *See Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 598-99 (Alaska 2012) (describing "well-established rule that issues not argued in opening appellate briefs are waived" (quoting *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010))).

[7] Michael's witnesses included himself, his brother, and the parties' realtor, while Kathijo's witnesses included herself, an expert witness on domestic violence, and the parties' son.

[8] *See, e.g.*, *Hockema v. Hockema*, 403 P.3d 1080, 1089 (Alaska 2017) (stating " 'it is generally undesirable to require one person to support another on a long-term basis in the absence of an existing legal relationship' " and that "where possible" superior court should "address spouses' financial needs through property distribution, rather than through awards of spousal support" (quoting *Hanlon v. Hanlon*, 871 P.2d 229, 233 (Alaska 1994))).

### 1.     Kashwitna cabin

Michael purchased a lot in Kashwitna in 2001 because he intended to build a cabin on it. He funded the lot's purchase and construction of the cabin. The cabin was completed before the parties were married. During the marriage the family regularly visited the cabin for recreational use. Kathijo testified that she would cook, clean, and otherwise help maintain the property. She argued at trial that given her contributions to the cabin, and given that it was built when the parties were dating off and on, it should be considered marital property. At the time of divorce the cabin was worth $125,000.

In its decision on record the court found that because Michael purchased the lot and built the cabin before the parties were married, it was his separate property. The court determined that the parties' off-and-on dating relationship at the time the cabin was built did not alter the status of the property. Moreover, the court found that Michael never intended to donate the Kashwitna cabin to the marital estate. It therefore remained his separate property.

### 2.     Chevy Tahoe

In 2017 Michael purchased a Chevy Tahoe for Kathijo. When the parties divorced the car loan had a remaining balance of $20,918.25. Kathijo claimed that the car was a gift and that she therefore was not responsible for payments on the car loan. Michael acknowledged that he purchased the car, but testified that he made all large purchases in the marriage and did not intend for the car to be non-marital.

The court credited Michael's testimony that the car was not a gift and found that position to be supported by the parties' 2018-2020 tax returns. Those tax returns treated the Tahoe as a marital asset and a business asset that was used to support a tanning salon business that Michael purchased and Kathijo helped run. The court treated the car as a marital asset and assigned the car and the remaining loan balance to Kathijo.

Further, the court concluded that the parties' 2018, 2019, and 2020 tax returns were fraudulent because Michael listed the depreciation value of the Chevy Tahoe as the purchase price of the vehicle in order to obtain higher deductions. The court instructed Kathijo to pursue relief as an innocent spouse from the IRS because it believed Michael's "illegitimate tax refunds" potentially subjected the parties to criminal or civil liability. The court held that Michael would be liable for any future debts to the IRS. It noted that this liability "has the potential for skewing the 60/40 percentage even more in [Kathijo's] favor."

### 3. Appraisal

Kathijo paid for an expert appraisal of a home that Michael purchased in contempt of court.[9] The expert who prepared the report was listed on Kathijo's witness list. The house was appraised at $475,000 when Michael purchased it, but Kathijo's expert appraised it at $465,000. The appraisal was never formally entered into evidence and Kathijo's attorney objected to any discussion of it during trial on hearsay grounds. The court overruled this objection. However, in its decision on record, the court noted that the exact appraisal figure did not matter because there was clearly "absolutely no equity in th[e] property." Michael was allowed to retain the home, but the court treated 5/6 of the bonus money he used to purchase it as marital and credited Michael as having received that amount. In other words the court deemed 5/6 of the asset of value — the bonus money — as marital, and deemed the asset associated with significant debt as Michael's separate property and "sole liability."

---

[9] Michael used a year-end bonus to secretly purchase a home for himself while the divorce was pending, which violated the court's orders.

### 4. QDRO

Following trial and the court's decision on record, the court issued a Qualified Domestic Relations Order (QDRO) pursuant to Alaska Civil Rule 90.1(g).[10] The order recognized Kathijo's right to receive $74,360.19 from Michael's 401(k) Savings Plan in lieu of an equalization payment. However, after Kathijo filed the present appeal, the court stayed enforcement of the QDRO. At present neither party can access funds from Michael's 401(k) until this appeal is resolved.

## III. STANDARD OF REVIEW

The equitable division of marital property is a three-step process that involves "(1) determining the specific property available for distribution; (2) valuing the available property; and (3) equitably dividing property available for distribution."[11]

As to step one, "[t]he characterization of property as separate or marital may involve both legal and factual questions."[12] Findings regarding the parties' intent, actions, and contributions are factual questions.[13] "We review factual findings for clear error, which exists 'only when we are left with a definite and firm conviction based on the entire record that a mistake has been made.' "[14] Whether the trial court applied the correct legal rule is a question of law that we review using our independent judgment.[15] The second step, valuation of property, is a factual finding reviewed for clear error.[16]

---

[10] *See* Alaska R. Civ. P. 90.1(g) (detailing procedural requirements for party submitting proposed QDRO).

[11] *Brennan v. Brennan*, 425 P.3d 99, 105 (Alaska 2018).

[12] *Id.* at 104 (quoting *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013)).

[13] *Kessler v. Kessler*, 411 P.3d 616, 621 (Alaska 2018).

[14] *Pasley v. Pasley*, 442 P.3d 738, 744 (Alaska 2019) (quoting *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017)).

[15] *Brennan*, 425 P.3d at 105.

[16] *Pasley*, 442 P.3d at 744.

We review the third step, equitable division of property, for abuse of discretion.[17] "An equal division of property is presumptively equitable, but the trial court has broad discretion in this area."[18] We also review "a superior court's issuance of an order permitting the sale of property" during divorce proceedings,[19] as well as the court's "interim order[s], award[s] of rehabilitative alimony, . . . and award[s] of attorney's fees and costs,"[20] for abuse of discretion. We will not disturb the trial court's division "unless it is clearly unjust."[21]

"[A] trial court's decision not to hold an evidentiary hearing is subject to our independent review."[22] Finally "[w]e review the trial court's decision to admit evidence under a hearsay exception for abuse of discretion."[23]

## IV. DISCUSSION

### A. The Court Did Not Err When It Compelled The Sale Of The Marital Home Without Holding An Evidentiary Hearing.

Kathijo argues the superior court erred by failing to hold a hearing before it compelled the sale of the marital home. Michael responds that Kathijo did not request a hearing when she opposed his motion to compel the sale and that, regardless, a hearing was not warranted. We agree with Michael.

Kathijo, represented by counsel during the relevant proceedings, at no time requested that the court hold an evidentiary hearing regarding Michael's motion.

---

[17] *Brennan*, 425 P.3d at 105.

[18] *Id.* at 106 (citing *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)).

[19] *See Watega v. Watega*, 143 P.3d 658, 663 (Alaska 2006).

[20] *Virgin v. Virgin*, 990 P.2d 1040, 1043 (Alaska 1999) (internal footnotes omitted).

[21] *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991) (quoting *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988)).

[22] *Childs v. Childs*, 310 P.3d 955, 958 (Alaska 2013).

[23] *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000).

In Alaska, if a party desires a hearing on a motion, then the party "shall request a hearing within five days after service of a responsive pleading."[24] And more to the point, Kathijo at no time identified a material factual question that required the court to hold an evidentiary hearing. We have emphasized that courts must hold evidentiary hearings, in spite of the lack of a request, when there exist genuine disputes regarding material facts.[25] But Kathijo has not highlighted any material factual issue that would have required the court to schedule a hearing sua sponte. Instead, the undisputed facts in this case support the court's decision to compel the sale of the home.

Indeed the record of undisputed facts indicates that the court protected marital assets by ordering the sale. In *Layton v. O'Dea*, we emphasized that "[p]reventing waste of marital assets" is sufficient reason for a court to order pre-division sale of a marital home.[26] Here, by the time Kathijo disputed the sale, she had already moved out of the residence and signed the exclusive agency contract with the realty company. That agreement required the parties to pay their realtor over $30,000 if the sale did not proceed. Liability for this payment was a "pressing reason" for the court to compel the sale of the home as the marital estate in this case was not particularly large.[27] The court found reason to compel the sale of the home. Although its findings could have been more detailed,[28] it was clear that the court's order for the pre-division

---

[24] *See* Alaska R. Civ. P. 77(e)(1).

[25] *Cf. Hartley v. Hartley*, 205 P.3d 342, 350 (Alaska 2009) ("An evidentiary hearing is not necessary if there is no genuine issue of material fact.").

[26] 515 P.3d 92, 103-04 (Alaska 2022).

[27] *See Husseini v. Husseini*, 230 P.3d 682, 688 (Alaska 2010) ("[A] sale of property should not be ordered absent a pressing reason, such as the preservation of marital assets or significant gains to the marital estate."); *see also Watega v. Watega*, 143 P.3d 658, 663-64 (Alaska 2006).

[28] *See Layton*, 515 P.3d at 103-04 ("Preventing waste of marital assets is a sufficient reason to authorize a pre-division sale, provided that (1) the superior court's

sale prevented the waste of significant marital assets. The court therefore did not err in ordering the sale without holding an evidentiary hearing.

## B. The Court's Final Distribution Was Fair And Equitable.

Kathijo argues that she "should have received a larger share of the marital estate" because the court "did not fairly allocate the economic impact of the divorce."[29] She also believes the court erred because it "reimbursed" Michael for his IRS tax liability and awarded Kathijo "a small amount of the marital estate" as a result. Michael asserts the court's final distribution was fair and equitable, that the court did not abuse its discretion, and that it properly considered all of the relevant factors. He also emphasizes that the court determined a 60/40 division was fair and equitable regardless of his potential tax liability.

We conclude the court's division of the parties' property was within its discretion to determine a fair and equitable distribution. The record demonstrates that the court took into account the parties' "earning capacity . . . educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage"[30] when awarding Kathijo 60% of the marital estate. For instance, the court noted Michael's high salary throughout the parties' 18-year marriage, including his salary exceeding $230,000 in the year prior to the divorce. Despite Michael's high earning capacity in the IT sector, the court highlighted that "the financial condition of the parties [was] really quite bad." The court urged Michael to control his spending habits, and indicated that he wasted marital assets when he purchased a home in contempt of court during the pendency of

---

findings adequately justify the sale, and (2) the sale actually preserves the marital estate." (citation omitted)).

[29]     AS 25.24.160(a)(4) (codifying and expanding factors articulated in *Merrill v. Merrill*, 368 P.2d 546, 547-48 n.4 (Alaska 1962)).

[30]     *See Cartee v. Cartee*, 239 P.3d 707, 713-14 (Alaska 2010); AS 25.24.160(a)(4).

divorce. In addition, the court acknowledged that Kathijo was the disadvantaged spouse, given her sporadic employment history in clerical positions, her primary responsibility for raising the children during the marriage, and her lack of a college degree. The court urged Kathijo to seek employment, and noted that its cash award could be used for her to return to school. Overall, in light of Kathijo's disadvantaged position, the court determined that a 60/40 split in her favor was equitable and fair. Given the support in the record for the court's underlying findings, and the court's reasoned analysis of the relevant factors, we affirm.[31]

Additionally, Kathijo's argument regarding the court's handling of Michael's potential tax liability is without merit. There is no evidence in the court's decision that it penalized Kathijo for Michael's potential tax liability or distributed the parties' property inequitably in order to account for the potential tax liability. The court did note that Michael's possible future liability "ha[d] the potential for skewing the 60/40 percentage even more in [Kathijo's] favor depending on what happens there." However, the court also stated that "60/40 is appropriate, fair, and equitable" regardless of Michael's potential tax liability, and that analysis is well-supported by the record.[32] Overall the court's final distribution was not "clearly unjust," but rather was well within its broad discretion.[33]

---

[31]   *See Brennan v. Brennan*, 425 P.3d 99, 105 (Alaska 2018) ("[T]he trial court must render findings of ultimate fact that support any decreed property division." (quoting *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013))).

[32]   *See Hockema v. Hockema*, 403 P.3d 1080, 1092 (Alaska 2017) ("[A] trial court must determine whether the financial needs of a disadvantaged spouse can be met by awarding a disproportionate share of the marital estate. This determination must be supported by adequate findings." (internal footnotes omitted)). The court's findings here met this standard.

[33]   *See Urban v. Urban*, 314 P.3d 513, 515 (Alaska 2013) (explaining we reverse trial court's "allocations of property . . . only if they are clearly unjust" (quoting *Barnett v. Barnett*, 238 P.3d 594, 597 (Alaska 2010))).

**C.** **The Court Did Not Abuse Its Discretion When It Declined To Award Kathijo Attorney's Fees Or Spousal Support.**

Kathijo appeals the superior court's decision not to award her attorney's fees, rehabilitative alimony, or long-term spousal support, and its decision to treat the amounts she was awarded in the interim as pre-distributions of her share of the marital estate. Michael disagrees, arguing the court's decisions were within its discretion.

We conclude that the court's denial of various forms of spousal support and attorney's fees was within the court's discretion in light of its final property distribution. When the court divided the parties' marital estate, it awarded Kathijo 100% of the proceeds from the sale of the marital home and 60% of the marital estate overall. It noted the "downside" of this award of cash was that Kathijo would not be provided attorney's fees or spousal support because she could instead use the cash to fund her expenses, fees, and education. The court also took into account "the financial conditions of the parties,"[34] in that it noted Kathijo's lower earning capacity and Michael's belief he could not afford to pay spousal support or attorney's fees.[35] Although the court may have been within its discretion to award modest spousal support or attorney's fees, including interim support not credited against Kathijo's share of the marital estate, it found that its final 60/40 property division in Kathijo's favor was sufficient to meet Kathijo's needs.[36] That finding was not clearly erroneous. Given the court's well-supported findings and its property distribution awarding Kathijo the

---

[34] *See* AS 25.24.160(a)(4)(D).

[35] We note that Michael's belief in this area appears unfounded considering the bonus monies he used to secretly purchase a home for himself during the divorce proceedings.

[36] *See Hockema*, 403 P.3d at 1089 ("[T]rial courts should, where possible, address spouses' financial needs through property distribution, rather than through awards of spousal support.").

majority of the parties' liquid marital assets, the court did not abuse its discretion in denying awards of spousal support or attorney's fees.

**D.**     **The Court Did Not Err When It Determined The Kashwitna Cabin Was Michael's Separate Property.**

In general, "property is separate property if it was acquired by a spouse before the marriage, and property is marital property if it was acquired by a spouse during the marriage."[37]   However "[p]roperty acquired by a couple prior to marriage may be considered marital if the property was acquired during premarital cohabitation."[38]   And separate property brought into the marriage can "transmute" into marital property "when one spouse intends to donate separate property to the marital estate and engages in conduct demonstrating that intent."[39]

Kathijo argues the Kashwitna cabin should have been treated as a marital asset because it was built while the parties were cohabitating prior to marriage.  Michael asserts the court properly determined the cabin was his separate property.

We conclude the court properly classified the cabin as Michael's separate property based on its findings regarding the nature of the parties' relationship when the cabin was built.  The court reasoned that Michael purchased the land the cabin was built on, and funded the construction of the cabin itself, before the parties were married and when their relationship status was inconsistent.   In Alaska, if domestic partners "intended to share in the fruits of their relationship as though married," then courts may equally divide their property.[40]   Here the record supports that Michael and Kathijo's

---

[37]     *Kessler v. Kessler*, 411 P.3d 616, 618 (Alaska 2018).

[38]     *McLaren v. McLaren*, 268 P.3d 323, 332 (Alaska 2012).

[39]     *Kessler*, 411 P.3d at 619.

[40]     *Reed v. Parrish*, 286 P.3d 1054, 1057 (Alaska 2012) *quoted in Tomal v. Anderson*, 426 P.3d 915, 923 (Alaska 2018); *see also Tomal*, 426 P.3d at 922 n.4 (defining "domestic partners" as "unmarried cohabitants living in a marriage-like relationship").

relationship was "off and on" when the cabin was built. The superior court cited testimony indicating that the parties' relationship at that time was inconsistent, and ultimately insufficient to establish cohabitation such that the cabin belonged to both of them instead of just Michael.

Additionally, given the parties' respective testimony at trial, the court did not clearly err when it further found that Michael never intended to donate or gift the cabin to the marital estate.[41] We therefore affirm the court's ultimate determination that the cabin was Michael's separate property.[42]

### E. The Court Did Not Err When It Determined The Chevy Tahoe Was A Marital Asset.

Kathijo asserts the Chevy Tahoe was improperly classified as a marital asset because Michael purchased it for her as a gift. She also argues that Michael should correspondingly have been held responsible for the car loan. Michael argues the court properly characterized the Tahoe as marital. In particular he maintains he purchased the car for use in the parties' tanning salon business, as evidenced by the parties' 2017-2020 tax returns.

Despite the mixed evidence on this issue, the court did not clearly err in determining that Michael intended to purchase the Chevy Tahoe as a marital asset to be used by the parties in support of their business. Although there is evidence in the record that could support the idea that the car was a gift, there was also testimony and objective evidence indicating that the car was a marital asset Michael bought to support the parties' tanning salon business. The court weighed this conflicting evidence, and

---

[41] *See Kessler*, 411 P.3d at 621 (stating wife's contributions to husband's separate property did not overcome husband's lack of donative intent to gift property to marital estate).

[42] *See id.* (stating findings regarding parties' intent is factual question reviewed for clear error).

determined the car was marital property.[43]   In evaluating the parties' conflicting testimony, the court placed weight on the evidence that the parties' tax returns treated the Tahoe as an asset of their business.  Given that the superior court was in the best position to evaluate the mixed evidence on this issue, we decline to reweigh that evidence.[44]  Because the court's findings related to Michael's intent in purchasing the Chevy Tahoe are supported by evidence in the record, we affirm its characterization of the car as marital, as well as its distribution of the car and associated debt to Kathijo.

F.      **Any Error In Allowing Testimony About The Appraisal Of Michael's Separate Property Was Harmless.**

Kathijo argues the superior court erred when it allowed testimony, over her objection, about the appraisal of a property that Michael purchased post-separation. Kathijo contends this testimony was improper hearsay because the expert who prepared the appraisal did not testify.  Michael asserts the court properly allowed discussion of the appraisal during trial because it became an "admission" under Alaska Evidence Rule 801(d)(2) after Kathijo's attorney sent the appraisal to opposing counsel and listed the authoring expert as one of Kathijo's witnesses.  And regardless, Michael contends that any violation of the rules against hearsay was harmless.

We need not address whether this testimony was improper hearsay, because we agree with Michael that any potential error in allowing it was harmless. The court made it clear that it did not rely on the appraisal in its final distribution, as there was a clear lack of equity in the home regardless of this particular appraisal.[45] Moreover, the court's decision to treat the home as Michael's separate property and to

---

[43]     It is the trial court's function to weigh conflicting evidence.  *See Pasley v. Pasley*, 442 P.3d 738, 752 (Alaska 2019).

[44]     *See id.* ("Where the trial court makes factual findings that, as here, are supported by the record, we do not reweigh the conflicting evidence.").

[45]     *See* Alaska R. Civ. P. 61 (stating any error that does not affect substantial rights must be disregarded "at every stage of proceeding").

recapture the marital bonus funds Michael had used to purchase the property benefitted Kathijo. The court noted that the $451,250 mortgage on the property would have added a substantial debt to the parties' marital estate if treated as marital property. The court then observed that 5/6 of the bonus Michael had used to purchase the property was marital, increasing the amount of assets Kathijo would need to receive to offset Michael's receipt and use of the bonus. The court's treatment of the heavily mortgaged property as Michael's separate property and "sole liability," and its accounting for Michael's use of the mostly marital bonus, actually benefitted Kathijo, and no party objects to the court's characterization of the involved property and bonus. Under these circumstances, any error in allowing the testimony Kathijo complains of was necessarily harmless.[46]

### G. The Court Did Not Abuse Its Discretion When It Stayed Enforcement Of The QDRO.

Although Kathijo argues the court should not have stayed enforcement of the QDRO that granted her a portion of Michael's 401(k) account, it is not clear this issue is properly before us on appeal. The stay was ordered following final judgment and Kathijo's filing of this appeal, and neither party requested to supplement the record or points on appeal.[47] But even if the issue were properly before us, the court did not abuse its discretion when it stayed enforcement of the QDRO.[48] The court's stay

---

[46]     *See id.* ("No error in either the admission or the exclusion of evidence" may be used to disturb a judgment "unless refusal to take such action appears to the court inconsistent with substantial justice.").

[47]     *See generally* Alaska R. App. P. 204 (party may appeal final judgment, including identifying points on appeal); Alaska R. App. P. 210 (describing record on appeal and how to supplement record).

[48]     *See Armstrong v. Tanaka*, 228 P.3d 79, 82 (Alaska 2010) ("We review a trial court's ruling on a motion to stay for abuse of discretion.").

ensured sufficient funds would be available to the parties if we remanded for reconsideration of the court's final distribution.[49]

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's order dividing the parties' property.

---

[49]    *See* Alaska R. App. P. 204(d) (superior court may stay certain judgments on appeal before us including "to satisfy in full such modification of the judgment and such costs and interest as the supreme court may adjudge and award").