NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CATHERINE HUANG, | ) | |
| | ) | Supreme Court No. S-19027 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-21-06492 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| AARON KOBBEMAN, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2117 – November 12, 2025 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Robert J. Sato, Sato Law, LLC, Anchorage, for Appellant. David W. Baranow, Law Offices of David Baranow, Anchorage, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I.    INTRODUCTION

A man and a woman in a romantic relationship lived together for approximately one year, during which they became engaged, and purchased a house titled in both of their names. The superior court determined that the parties had a domestic partnership, but found that they did not intend the house to be partnership property. The woman appeals the court's classification of the house as the man's

---

\*    Entered under Alaska Appellate Rule 214.

separate property. We conclude that it was clear error to find that there was no intent to make the house partnership property. We therefore vacate the court's decision that the house was not intended to be partnership property and remand for additional fact finding in light of the evidence presented.

## II. FACTS AND PROCEEDINGS

### A. Facts

Catherine Huang and Aaron Kobbeman met online in 2019 and met for the first time in person in January 2020. Sometime in the next few months, Kobbeman moved into Huang's apartment as he prepared to sell his townhouse. As their relationship progressed, they talked more about getting married, buying a house together, and starting a family.[1]

In June 2020 they met with a real estate broker about buying property to build a house. They both signed a lot reservation form and an intent to purchase agreement. Kobbeman also paid a $5,000 deposit. Huang met Kobbeman's family at a family reunion in the fall, and Kobbeman bought engagement and wedding rings for Huang. In late January 2021, Huang and Kobbeman applied for and signed a marriage license application.[2]

On March 1, as the house construction neared completion, a loan officer emailed Kobbeman asking whether Huang would be added to the title as his wife. He replied "Yes, I would like to add my Fiancé, Catherine Huang to the title." Later that month, Huang and Kobbeman closed on the home. Both the deed and deed of trust identified them as "husband and wife," and they each signed the deed of trust. Kobbeman made the $30,000 down payment on the home.

Huang and Kobbeman continued living in Huang's apartment until May 7, when they moved into the new house together. On May 11, after an argument and

---

[1] They did not marry or have children.

[2] They never filed the application.

confrontation, Huang and Kobbeman's vehicles collided in front of the property. Police were called and arrested Huang. Kobbeman remained living in the house and Huang did not return except to retrieve her belongings.

### B. Proceedings

In June, Huang filed a complaint for dissolution of a domestic partnership. She stated that she and Kobbeman had acquired property during their domestic partnership and requested that the court equitably divide the property.

Kobbeman answered and filed a counterclaim. He characterized their relationship as an "intimate and periodic cohabitation," but denied they had a domestic partnership or acquired partnership property.

The superior court held a two-day evidentiary hearing in August and September 2023. Huang testified that she had been the main point of contact with contractors for the home construction and estimated she spent between 600 and 1,000 hours of paid leave to oversee building decisions while Kobbeman was at work.[3]

Kobbeman testified that he — not Huang — was the primary contact for decisions regarding the home construction and he doubted that Huang spent as much time as she claimed working on the house. He testified he paid for the house and related expenses. He testified that he had intended to marry Huang until the May 11 incident, but that he did not intend to own the house jointly with her. And he testified that he thought Huang's name on the deed of trust meant that in case "something were to happen" to him, she would become the owner of the property.

The superior court issued findings of fact and conclusions of law. It concluded that Huang and Kobbeman had a domestic partnership, but that the house was not partnership property. The court's findings and conclusions about the domestic

---

[3] She also testified that Kobbeman kept some of her separate property, which Kobbeman denied. The court found that Kobbeman had not kept any of her property. Huang does not appeal that finding.

partnership were brief.[4]  It found based on the "totality of circumstances" that Huang and Kobbeman shared "an intent . . . to be a domestic partnership."  But "[a]fter considering the totality of circumstances, the court [found] that [Kobbeman] did not intend to make the home joint property."

Huang appeals.

## III.  STANDARD OF REVIEW

When reviewing a trial court's classification of property as partnership property or separate property, "[w]e review the trial court's factual findings about intent for clear error; its classification decisions based on statute, contract, or intent are legal questions that we review de novo."[5]

## IV.  DISCUSSION

Huang argues that the court erred by finding that the house deeded in both her and Kobbeman's names was not property of the domestic partnership.  We agree.  After the court found that the couple had a domestic partnership, its consideration of the evidence too narrowly focused on the quality and duration of their relationship when it characterized the house.  This was legal error; we therefore vacate the conclusion that the house was not property of the domestic partnership and remand for further proceedings.

### A.  It Was Error To Find No Intent To Include The House In The Domestic Partnership.

Whether the house should be classified as domestic partnership property turns on the parties' intent.[6]  Determining whether the parties intended a piece of

---

**4**  The court's conclusion that there was a domestic partnership was not appealed.

**5**  *Wright v. Dropik*, 512 P.3d 655, 661 (Alaska 2022).

**6**  *Tomal v. Anderson*, 426 P.3d 915, 923 (Alaska 2018) ("[A]bsent a controlling statute or a valid contract between the parties, property must be classified strictly according to the parties' intent.").

property to belong to the partnership "is based on the totality of the circumstances,"[7] *Bishop v. Clark* further explains that

> courts consider, among other factors, whether the parties have (1) made joint financial arrangements such as joint savings or checking accounts, or jointly titled property; (2) filed joint tax returns; (3) held themselves out as husband and wife; (4) contributed to the payment of household expenses; (5) contributed to the improvement and maintenance of the disputed property; and (6) participated in a joint business venture. Whether they have raised children together or incurred joint debts is also important.[8]

Huang argues that the parties intended to own the house together and therefore it belongs to the domestic partnership; Kobbeman argues that there was no such intent and that it was his separate property. The court determined that the house was not partnership property. But in reaching its decision, the court relied narrowly on each party's financial contributions to the house and on the length and ending of Huang and Kobbeman's relationship.

The court found that there was a domestic partnership in part because Kobbeman lived in Huang's apartment and shared household expenses, a finding that correlates to the fourth *Bishop* factor.[9] When it decided that the house was not partnership property, the court placed great weight on the fact that Huang had not contributed to it; "[s]he is asking for half of the equity in the home without any financial skin or sweat equity in the project." It found that Huang's testimony about the time and effort she contributed was not credible.

---

[7]      *McConville v. Otness*, 498 P.3d 632, 635 (Alaska 2021) (citing *Bishop v. Clark*, 54 P.3d 804, 811 (Alaska 2002), *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915).

[8]      *Bishop*, 54 P.3d at 811.

[9]      *Bishop*, 54 P.3d at 811 ("courts consider, among other factors, whether the parties have . . . (4) contributed to the payment of household expenses").

While *Bishop*'s factors include contributions toward household expenses and improving and maintaining the disputed property, it does not require "financial skin or sweat equity" for a property to be included in a domestic partnership.[10] Our previous domestic partnership cases make clear that it is the parties' intent and not the level of their shared finances that ultimately controls the classification of property.

In *Reed v. Parrish*, a couple had an "intermittent relationship."[11] They did not jointly file their taxes, had no joint business venture, and one party paid most of the partnership expenses.[12] We noted that despite the unequal financial contributions, "the parties intended to share property as though married."[13] In addition to leasing an apartment together and jointly purchasing a vehicle, they both contributed to the household "when [they] had money."[14] The wealthier party argued that there was no domestic partnership because he paid most of the bills, they maintained separate financial accounts, and they filed their tax returns separately.[15] But we cautioned that

> [this] argument misinterprets the import of the listed *Bishop* factors. First, the factors are not exclusive; they reflect the factual circumstances of the case — in *Bishop* the parties happened to have formalized financial arrangements that indicated financial interdependence. Here, [the couple] had not formalized their arrangements but were still financially interdependent. As noted above, the couple made many joint financial decisions. The fact that they did not have a joint bank account does not defeat the couple's intertwined financial decision-making.[16]

---

[10]   *See id.*

[11]   286 P.3d 1054, 1057 (Alaska 2012).

[12]   *Id.*

[13]   *Id.*

[14]   *Id.*

[15]   *Id.* at 1058.

[16]   *Id.* (footnotes omitted).

Huang and Kobbeman similarly had no joint bank accounts and made uneven financial contributions, yet they ultimately depended on one another to make joint financial decisions regarding the home.

When it relied upon its conclusion that Huang did not contribute money or "sweat equity" to the house, the court ignored Kobbeman's testimony that Huang did, in fact, help coordinate some of the home construction. It was clear error for the court to find that Huang "did not provide any labor . . . towards building the home."

The court acknowledged that Huang's "strongest argument" that the house was partnership property was that her and Kobbeman's names were listed on the title document as husband and wife. When it rejected that argument, the court apparently relied exclusively on *Tolan v. Kimball* in which we rejected a rule that title or possession is dispositive of property ownership.[17] But our reasoning there was born of the concern that deferring to the title or mere possession "tends to operate purely by accident or perhaps by reason of the cunning, anticipatory designs of just one of the parties."[18] This was relevant in *Tolan*, a property dispute where one party purchased a house and titled it only in her name.[19] Because the evidence supported both parties' ownership stake in the property, we determined that the woman's refusal to put the man's name on the title constituted "a cunning, anticipatory design . . . rather than an indicator of the parties' mutual intent."[20] The concerns raised by *Tolan* are irrelevant where there is affirmative support in the record that the parties intended to establish some level of joint ownership interest in the property.

Here the court determined "[i]t is not clear from the evidence presented whether 'cunning, anticipatory designs,' were used to get [Huang's] name on the deed."

---

[17]    33 P.3d 1152, 1156 (Alaska 2001).

[18]    *Id.* (quoting *Beal v. Beal*, 577 P.2d 507, 509 (Or. 1978)).

[19]    *Id.* at 1152-53.

[20]    *Id.* at 1156 (internal quotation marks omitted).

Yet it did not also make note of the evidence presented that Huang's name was placed on the title intentionally. Kobbeman asked that Huang's name be put on the title and he testified that he was aware the property was jointly titled. Kobbeman also testified that Huang's name was put on the title so that if something happened to him, she would own the house.

The court noted that there was evidence that Huang and Kobbeman intended to own the house jointly, and it also credited Kobbeman's testimony that he intended the house to go to Huang only in the event "something were to happen" to him and that he did not intend at the time of signing for Huang to be a co-owner. But the court failed to reconcile this conflicting evidence.

The court's conclusion that Kobbeman did not intend to jointly own the house with Huang also ignored evidence that supported their intent to jointly own it: the email exchange in which Kobbeman said to the loan officer, "Yes, I would like to add my Fiancé, Catherine Huang to the title" and his testimony confirming he asked for her to be on the conveyance documents; their marriage license application and intent to marry until the May 11 incident; their shared household expenses in her apartment; his testimony about why her name was on the title; and finally, that both of their names appear on the deed of trust and the warranty deed as husband and wife. All this evidence supports a finding that Kobbeman intended to give Huang some ownership interest in the home, yet the court focused only on the names appearing on the title when it classified the house.[21] This failure to consider conflicting evidence was error.[22]

The court found that Huang and Kobbeman's relationship was tenuous and short-lived and observed that it was much shorter than other cases involving

---

[21] *See Bishop v. Clark*, 54 P.3d 804, 811 (Alaska 2002) ("[A]bsent an express agreement, courts should closely examine the facts in evidence to determine what the parties implicitly agreed upon.").

[22] *Id.*

domestic partnership property.[23]  However, nothing in *Bishop* or our subsequent cases applying its factors suggests that the length of the relationship is relevant to whether disputed property belongs to a domestic partnership.  It was error for the court to rely upon the instability and length of the relationship to conclude that the house was not partnership property.

The court did not need to look beyond the parties' stated intent to own the property that they acquired during the partnership together.[24]  Kobbeman testified that he requested that Huang's name be on the conveyance documents and title; both his and her names were on the warranty deed and the deed of trust as husband and wife; household expenses were shared at Huang's apartment; and Kobbeman admitted that he knew the property was jointly titled and that Huang was on the title so that if something happened to him, she would be the owner.  Both Huang and Kobbeman signed the deed of trust, establishing their equitable title ownership interests when they closed on the house, and they moved into the house soon afterward.  Yet the court made no mention of Kobbeman's testimony and considered Huang's name on the deed as the only evidence supporting her joint interest in the property.  The court thus relied on factors that did not actually inform the parties' intent to jointly own the house, and in doing so it ignored important testimony and other evidence which did support such an intent.

Because the parties' intent controls the classification of the property, and the court overlooked factors that expressly support Huang and Kobbeman's intent to

---

[23]  *See McConville v. Otness*, 489 P.3d 632, 633-34 (Alaska 2021) (six years); *Tolan*, 33 P.3d 1152-53 (seven years); *Wood v. Collins*, 812 P.2d 951, 953 (Alaska 1991) (twelve years); *Tomal v. Anderson*, 426 P.3d 915, 920, 925 (Alaska 2018) (fourteen years); *Bishop*, 54 P.3d at 807 (thirteen years).

[24]  *See Tomal*, 426 P.3d at 925 (stating court need not find specific intent to jointly own property if general intent to own property together in marriage-like relationship exists).

jointly own the property, we vacate and remand its decision on the classification of the home as separate property for additional fact finding.

## V.  CONCLUSION

We VACATE the finding that the parties did not intend the house to be domestic partnership property and REMAND for further proceedings consistent with this opinion.